**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles ALDEN, a/k/a Charles Alden Boyd, Defendant-Appellant.**

**No. 71–1717.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1972.

Decided March 30, 1973.

---

6. The superintendent of schools testified that in observing Mrs. Fisher's classes, he had "always found them in good order."

Michael P. Toomin, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Richard M. Williams, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and PELL, Circuit Judge.

PELL, Circuit Judge.

Alden appeals from his conviction on all three counts of an indictment founded on 18 U.S.C. § 2113(a) and (d). There was no dispute about the factual basis of the indictment. On June 5, 1970, Alden, then in his late sixties, handed a teller in the South Chicago Savings Bank a note demanding money and referring to a back-up man elsewhere in the bank. He departed with $9500.00 in a paper bag. On November 6, 1970, at the same bank, Alden presented a similar note to a different teller located near the scene of the first incident. He departed without any money. On November 12, 1970, he again appeared at the same bank with a similar note which was presented to a third teller also in the same general area of the bank. He departed hastily without his note being honored. He was apprehended outside the bank. During the course thereof, using a toy pistol, Alden squirted a window washing fluid containing ammonia into the face of a bank employee. The only apparent attempt Alden made to disguise his appearance at any time was the wearing of a gauze patch over one lens of his glasses during the third incident.

These basic facts were not controverted by Alden. His attempted defense, which was made clear in both opening statement and closing argument of his counsel, was that he lacked the requisite mental intent. The present appeal relates to the intervening period of time between these two oral articulations of the defense, as to which Alden contends that his continuing efforts to substantiate his defense were thwarted by an unfair trial. We agree and reverse.

■■ By way of general support of a number of the challenged rulings precluding testimony in response to defense questions to witnesses, the Government attaches talismanic significance to the

lack of offers to prove: "Failure to make an offer of proof precludes the reviewing court from passing upon the trial court's exclusion of evidence." It is true that reference has been made in the cases to this lack. The emphasis appears to be that the reviewing court without the benefit of the offer was unable to judge whether the exclusion was prejudicially erroneous. See, *e. g.,* Trust Co. of Chicago v. Erie R. Co., 165 F.2d 806, 810 (7th Cir. 1948), cert. denied, 334 U.S. 845, 68 S.Ct. 1513, 92 L. Ed. 1769. The other side of this particular coin, however, is that "a formal offer of proof is not necessary where the record shows, either from the form of the question asked or otherwise, what the substance of the proposed evidence is." Iva Ikuko Toguri D'Aquino v. United States, 192 F.2d 338, 374 (9th Cir. 1951), cert. denied, 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343 (1952). Trial counsel certainly would be well advised not to take the calculated risk of being rescued by this obviousness standard; however, in the present case we are compelled to the conclusion that in numerous instances there could not have been other than an awareness of that which would have been forthcoming from the witnesses if they had been permitted to answer. So long as substantial rights are affected, Rule 52(a), Fed.R.Crim.P., if "a question is proper on its face and indicates an answer favorable to the appellant, no offer of proof is necessary." Harris v. Smith, 372 F.2d 806, 815 (8th Cir. 1967). Of course, there should be a showing of relevancy and materiality. Here the expected answers clearly could have had an impact on "substantial rights" since they pertained to the essence of what was admittedly Alden's only defense. We also note that frequently the objections to questions were nonexplicit and counsel's attempts to discover the basis of the ruling or to argue law were summarily cut off by the district court.

Turning to the specifics of the defense effort, we first are concerned with the proposed testimony of two psychia-trists brought to the stand by Alden. Dr. David A. Rothstein had examined the defendant on January 11, 1971. Upon learning of this, the Government moved for a psychiatric examination which was ordered and was thereafter conducted by Dr. Richard Marohn on January 18 and 23, 1971. Copies of their respective findings were tendered both to the prosecution and to the defense.

Both psychiatrists were called as witnesses by Alden but for all practical purposes they might as well have stayed at their offices. The opportunity that Alden had of demonstrating whether or not there was verity to his defense of mental incompetency is illustrated more graphically by extracts from the record than it would be by our characterizations thereof.

Thus, the following is set forth from the transcript of Dr. Rothstein's appearance on the witness stand:

BY MR. TOOMIN:

Q Doctor, based on the examination that you made on the date in question, what, if any, diagnosis were you able to make?

A My diagnosis—

MR. WILLIAMS: Objection at this time for the record, your Honor, for failure to see any relevancy to the dates of the offenses.

THE COURT: I sustain the objection.

MR. TOOMIN: Your Honor, do I understand that the objection—

THE COURT: I am not here to answer questions. You asked the question and if the United States Attorney wants to object, he may. It is my responsibility to rule on the objections.

BY MR. TOOMIN:

Q Doctor, based on the examination that you made on January 11, 1971, were you able to arrive at any diagnosis, if any, as to the defendant's condition on June 5, 1970?

MR. WILLIAMS: Objection at this time, your Honor.

THE COURT: I sustain the objection.

BY MR. TOOMIN:

Q Doctor, as a result of your examination of the defendant on January 11, 1971, were you able to reach a diagnosis based on a reasonable degree of medical certainty as to the defendant's mental condition on June 5, 1970, on which date he is accused of robbing the South Chicago Bank?

MR. WILLIAMS: Objection.

THE COURT: I sustain the objection.

\* \* \* \* \* \*

BY MR. TOOMIN:

Q Doctor, did you make any clinical observations of the defendant during the course of the examination?

MR. WILLIAMS: Objection, your Honor.

THE COURT: I sustain the objection.

\* \* \* \* \* \*

BY MR. TOOMIN:

Q Doctor, what were the results, if any, of your examination on January 11, 1971?

MR. WILLIAMS: Objection as to relevancy.

THE COURT: I sustain the objection.

\* \* \* \* \* \*

BY MR. TOOMIN:

Q Dr. Rothstein, recalling your attention to the date of your examination on January 11, 1970, [sic] would you relate to the ladies and gentlemen of the jury what, if any, physical observations you were able to make of the defendant?

MR. WILLIAMS: Objection, your Honor.

THE COURT: I will sustain the objection to that question.

BY MR. TOOMIN:

Q Did you have occasion on that date to see the defendant?

A Yes, I did.

Q What, if anything, do you recall at that time that you saw of the defendant?

MR. WILLIAMS: Objection, your Honor.

THE COURT: I sustain the objection.

BY MR. TOOMIN:

Q Can you describe the defendant on that date, sir?

MR. WILLIAMS: Objection.

THE COURT: I sustain the objection.

Apparently out of a sense of utter frustration, counsel discontinued his efforts at this point, and the Government lacking any evidence to counter did not cross-examine.

Dr. Marohn's appearance on the stand relating to his examination a full week more remote from the time of the crimes than that of Dr. Rothstein was accorded substantially similar treatment.

Insofar as we can gather from the record, the Government's objection was based and sustained on the ground of relevancy, i. e., that the examinations were too remote from the date of the offenses, even though the incident on which count three was based occurred only two months before Dr. Rothstein's examination and the most remote of the three incidents happened some seven months earlier. While there was no offer of proof made, it is fair to say that the district court evinced no interest in what the content of the answers might be. Compliance with the technical rules of evidence does not necessitate exercises in futility.

In Wright v. United States, 102 U.S. App.D.C. 36, 250 F.2d 4 (1957) (en banc), the Government argued remoteness as a reason for exclusion. The

court there brushed the contention aside with a footnote, 250 F.2d at 9, fn. 2:

"Moreover, whether, despite time lapse between the offense and the examination, a psychiatric opinion can be formed as to the accused's mental condition on the crucial date is a medical question within the competence of the qualified expert witness. The expert's qualifications being conceded, the court should be reluctant to exclude from evidence any relevant opinion which the expert feels able to give on the basis of observed or hypothetical facts. Of course, the fact basis of the opinion is a circumstance to be considered by the trier of the facts in determining the weight to be given to the opinion."

In United States v. Davis, 411 F.2d 570 (5th Cir. 1969), it was held that the trial court did not err in admitting testimony by a doctor as to his analysis of the defendant's mental state based on observation commencing six months after the offense. See also United States v. Westerhausen, 283 F.2d 844 (7th Cir. 1960).

■■ It is our holding that the district court clearly abused its discretion in not permitting the doctors to testify. We, in so holding, adopt the rule set out in II Wigmore on Evidence § 233, at 25 (3d ed. 1940), to the effect that since conditions of mental disease are more or less continuous, "[i]t is therefore proper, in order to ascertain the fact of its existence at a certain time, to consider its existence at a prior or subsequent time." In holding that the evidence was improperly excluded, we reject the Government's attempt to distinguish the cases cited above on the grounds that in the present case there was no evidence of prior psychosis nor was there a claim of incompetency by the defendant. Neither of these factors impinge on the thrust of the cases on which we have relied.

While the cutting off at the initial stage of the testimony of the professional expert witnesses is sufficient unto itself to dictate reversal, we do note that this phase of the case was merely one manifestation of what would seem to be a belief on the part of the district court that the defense was without merit. While the other errors on which we base this observation may not be repeated in the event the case is retried, they will be briefly adverted to as we have not lightly reached the conclusion noted above.

Thus, the Government was successful in having its objection sustained to a detailed hypothetical question to Dr. Rothstein on the basis that the question did not include all of the facts in evidence.

■■ The Government in support of its position relies on cases such as Harris v. Smith, supra, 372 F.2d at 812. It is no doubt true, as indicated in that case, that where a hypothetical question omits facts which so qualify the facts included that an answer would be misleading, the court should sustain an objection. We do not find the omitted facts as specified in the Government's objection to be of the character to justify the application of the Harris rule. Thus, it was objected that the question did not reflect certain matters that the defendant had recalled specifically in his testimony in the case. These facts were all before the jury and could without difficulty have been the subject of cross-examination of the psychiatrist to ascertain whether they would cause him to change his opinion. The witness was a professional and if the facts were insufficient for him to express an opinion he could have so stated. If, however, he did express an opinion in response to the question and the Government thought the facts were insufficient or that he would express a different opinion if other established facts had been in the question, it, of course, would have been free to utilize these facts in cross-examining him. The Government in essence was insisting upon putting into the question all evidentiary facts having any relationship to the issue before the court. Harris, supra, 372 F.2d at 812, expressly recognized that this is not necessary.

■ We think the better view is that if the question does not omit facts of such significance as to cause the answer to be misleading and if it includes enough that the expert can give an opinion, it is not necessary that all material facts be included. The safeguards lie in cross-examination. II Wigmore, *supra*, § 682, at 807, and 1970 Pocket Supplement at 309. McCormick on Evidence § 14, at 34 (2d ed. 1972). We also note that the Advisory Committee's Note on Rule 705 of the proposed Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183, 285 after referring to the extensive criticism of the hypothetical question, indicates that the expert need not on direct examination disclose the underlying facts or data on which his opinion is based unless the judge requires otherwise.

After the objection was sustained and counsel had been told by the court, "This is your last chance," an effort was made. at rephrasing the question. The effort covers ten pages of the transcript. Then,

"MR. WILLIAMS: Objection.

"THE COURT: I sustain the objection."

Following this nonilluminating colloquy, the court recessed over the noon hour. At the afternoon session, the following occurred:

MR. TOOMIN: Yes, if the Court please.

There was an objection prior to the recess for lunch and the Court sustained the objection. At this time I would again ask the grounds of the objection of the Government.

THE COURT: You may state the grounds.

MR. WILLIAMS: The grounds are the form of the question, the fact that the witness is asked to assume facts not in evidence in answer to the question.

THE COURT: I would say that is a fair statement and an accurate one of the objection, and a valid objection, or they are valid objections.

MR. TOOMIN: Your Honor, I would further ask for more specificity as to the facts which were stated in the hypothetical which are allegedly not in evidence.

THE COURT: You keep referring to things as facts. Facts are not found, sir, to be facts until the tryers of the facts find them to be facts.

MR. TOOMIN: I am aware of that, your Honor. I am merely saying that as to the assumed facts in the hypothetical—

THE COURT: You keep referring to facts. If I am trying the facts, if I am the tryer of the facts in a non-jury case, they are not facts until the testimony is in and then relying on the evidence, oral or documentary, if any, they become facts.

You know the Federal Rule provides for the submission of proposed findings of facts and conclusions of law. The jurors are the finders of the facts and have the responsibility for finding the facts.

The responsibility for finding the facts is vested in the jury. They are not facts, evidence is not considered facts, until it is demonstrated by the evidence. The mere fact that a witness says something doesn't make it a fact.

Bring in the jury, Mr. Marshal.

■ The trial then resumed and the effort at putting a hypothetical question was abandoned, the "last chance" having not made the grade. On appeal, the Government favors this court, as it did not the court or defendant below, with what it, now at least, found objectionable in the question, being that it included as a factor "having in mind your examination [of the defendant] as you have testified." Since the doctor was not allowed to testify to very much the factor does not seem of great significance. Also by its terms the question

seems to limit the fact to that to which the doctor had testified, which, of course, was a fact in evidence. Even if this had been construed to refer to all that the doctor had learned in his examination, most of which, as we have indicated, were not facts in evidence, it strikes us that a fair trial could have been accomplished by a simple specification of the erring portion and by directing the doctor to answer the question with that particular fact eliminated from his consideration. While a district court judge is under no duty to conduct a refresher course in the rules of evidence for counsel, he presumably is an interested participant in the quest for truth. We would not quickly fault a trial judge for not permitting an endless succession of long, improperly put questions, but here, if this was all the Government had in mind, and it is all that has been related to us on this appeal, fairness would seem to have indicated a quick excision and permitting the question to be answered. We, of course, do not know what included premising facts the court thought were not in evidence.

Finally, Alden contends that there was reversible error in the court's refusal to allow lay witnesses to give an opinion as to his sanity at a time contemporaneous with the offenses where such witnesses had known defendant over a period of many years. The two lay witnesses were a Reverend Vernon and his wife. Vernon was a minister of a Chicago church and a public school teacher. The Government on this appeal counters Alden's contentions by averring there was no error because in the discretion of the trial court the witnesses did not have a proper foundation or sufficient opportunities to observe Alden. It perhaps is arguably correct as to whether a foundation was actually laid when we note in the record that objections, without statement of reasons, were successively sustained to questions to Reverend Vernon as to whether in connection with his church duties he had had occasion to counsel Alden, whether he had had occasion to observe him in 1970, and wheth-

er he had had occasion to see him during the month of November 1970.

 There are two phases of the present matter. First, there is the question of lay witnesses testifying as to their observations of the person in question without the expression of an opinion as to mental capacity. Here the trial court should be liberal in admission, as any acts, conduct, declarations, spoken words, appearance, and manner of speech on the part of the person involved would be relevant to the issue. Even brief observation would not exclude the evidence but merely go to its weight, Mason v. United States, 402 F. 2d 732, 738 (8th Cir. 1968), cert. denied, 394 U.S. 950, 89 S.Ct. 1288, 22 L.Ed.2d 484 (1969).

The second phase of the matter involves the expression of an opinion by the lay witness. Here we are of the opinion, with which the Government apparently agrees, that the opinion can only be expressed where the witness has been qualified by sufficient association with an opportunity to observe the subject, *Mason, supra,* 402 F.2d at 739. The basic fault in the present case is that Alden was not permitted through the doorway of establishing the foundation.

Even if he had been permitted to do so, and we do note that it was in evidence that Reverend Vernon had been given a power of attorney by Alden and had known him as a friend for a great many years and had known him well in church functions, it is apparent from the record that the opportunity for his expressing an opinion would not have been accorded. We refer as illustrative of the basis of our belief in this respect to one final extract from the transcript:

BY MR. TOOMIN:

Q Reverend Vernon, based upon your associations with the defendant over the last twenty years, and based upon your experiences as both teacher and minister and your work in counseling people and associating with those who have been mentally

ill in the past, do you have an opinion as to whether on June 5, 1970, the defendant Charles Alden Boyd was—

MR. WILLIAMS: I am going to object at this time to the leading form of the question, your Honor. I believe we are still on direct examination.

THE COURT: Yes, this is direct examination. You are asking a clearly leading question, a question that suggests the answer.

While I believe that I am required to let you complete your question, and you may complete it, I shall then sustain the objection to it. You may not ask questions, the answers to which are suggested by the form of the question.

BY MR. TOOMIN:

Q Do you have an opinion, sir, as to whether on November 5, 1970, the Defendant Charles Alden Boyd was capable of knowing right from wrong?

MR. WILLIAMS: Objection.

THE COURT: I sustain the objection.

 Without determining whether the question may or may not have been objectionable on other grounds, we note the objection was squarely placed and sustained on the ground that the question was leading. We cannot comprehend how a question which calls for a yes or no answer as to whether a person has an opinion is leading and suggestive of the answer.

The defendant did make an offer of proof as to the Vernon testimony. With confessedly some amazement, we observe that the Government objected to the offer of proof and that this objection was sustained.

In the state of the resulting record, it is scarcely surprising that the district court refused to give defendant's proffered instruction on the issue of insanity although even here the evidence of the *modus operandi* of Alden might have

suggested either that he was foolhardy or that he failed to have sufficient mental capacity to have been guilty of the crimes charged. We do not deem it necessary, however, either to analyze the proffered instruction or to determine whether there was a totality of factual evidence such as to justify the giving of an insanity instruction. We do not think it likely, if the case is retried, that the state of the record will present this particular problem.

For the reasons we have set forth herein the judgment of the district court is reversed and the case is remanded for a new trial.

Reversed and remanded.

HASTINGS, Senior Circuit Judge.

I concur only in the result reached by the majority in this case.