**UNITED STATES of America, Appellee,**

v.

**Louis Joseph Marion Marvin IVES, Appellant.**

No. 78–3383.

United States Court of Appeals, Ninth Circuit.

Nov. 5, 1979.

Rehearing Denied Jan. 2, 1980.

Mark E. Vovos, Vovos & Voermans, Spokane, Wash., for appellant.

Carroll D. Gray, Asst. U. S. Atty., Spokane, Wash., argued, for appellee; Robert S. Linnell, Asst. U. S. Atty., Spokane, Wash., on brief.

Before CARTER and GOODWIN, Circuit Judges, and WATERS *, District Judge.

GOODWIN, Circuit Judge:

Louis Joseph Marion Marvin Ives was indicted in 1971 for a murder committed that year in Indian country, but he was then incompetent to stand trial. A trial was started in February 1972, but ended in a mistrial when the trial judge became convinced that Ives was still not competent to stand trial. In November 1972 another trial ended with a jury verdict of guilty. Ives appealed, and this court affirmed the judg-

---

* The Honorable Laughlin E. Waters, United States District Judge for the Central District of California, sitting by designation.

ment;[1] but the Supreme Court vacated judgment and remanded the cause for another examination into the competence of Ives to stand trial.[2] Ives was granted a new trial.[3] He was convicted again at the third trial conducted in October 1978. Ives again appeals.

Ives' history of mental illness goes back at least to 1968. He has been in federal custody at Springfield, Missouri, most of the time since 1971. There is little doubt that he suffers from paranoid manifestations of the group of disorders doctors call schizophrenia. His condition has not improved since it was first called to the attention of government (Bureau of Indian Affairs) personnel in 1968. The government contends, however, that notwithstanding the mental disorder for which Ives has been treated for more than ten years, he can still be held responsible for his conduct if, at the time of the killing, his mental condition fell within the current test of criminal responsibility followed in this circuit.[4]

■ The government's abstract legal theory is not challenged. A paranoid schizophrenic may, from time to time, have "lucid intervals", and be criminally liable despite his disorder.[5]

In the case at bar, Ives was not permitted to put before the jury all the relevant evidence he was entitled to produce in his defense. The court excluded all of Ives' medical records made by the government after 1973, on the ground that these records were too remote in time. (The government nonetheless relied on some of these records at the time of sentencing, to show "dangerous" propensities.)

The challenged records were of course remote from the date of the killing, but the records nonetheless had some relevance. The records tended to show a continuing mental state which Ives claimed was the same disease from which he was suffering at the time of the killing.

■ The only important issue in the case was Ives' mental condition at the time he killed the victim. There was no substantial dispute about any other material fact. With Ives' mental condition on a date in 1971 virtually the only point of inquiry before the jury, the government should have helped, rather than hindered, the defendant in his efforts to put before the jury all the government's available evidence on his mental condition. And the court should have received it. A mechanical exclusion based upon remoteness in this case exalted form over substance. The ruling denied the defendant an opportunity to present colorably probative evidence bearing upon the chronic state of the mental disability from which he claimed he was suffering at the time of the event in question.

■ When insanity is presented as a defense, "the trial judge should be free in his admission of all possibly relevant evidence." *United States v. Hartfield*, 513 F.2d 254, 260 (9th Cir. 1975). *Accord, United States v. Smith*, 507 F.2d 710 (4th Cir. 1974) (critically important that the defendant's entire relevant symptomology be brought before the jury); *United States v. Brawner*, 153 U.S.App.D.C. 1, 471 F.2d 969 (D.C.Cir. 1972) (en banc) (any and all conduct of the defendant is admissible in evidence). Possibly relevant evidence includes evidence of the defendant's mental condition over a period of time. "[S]ince conditions of mental disease are more or less continuous, '[i]t is therefore proper, in order to ascertain * * * [the existence of mental disease] at a certain time, to consider its existence at a prior or subsequent

1. *United States v. Ives*, 504 F.2d 935 (9th Cir. 1974).

2. Summary order, *Ives v. United States*, 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975).

3. *United States v. Ives*, 547 F.2d 1100 (9th Cir. 1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977); *United States v. Ives*, 574 F.2d 1002 (9th Cir. 1978).

4. *Wade v. United States*, 426 F.2d 64 (9th Cir. 1970) (en banc).

5. In *Buatte v. United States*, 330 F.2d 342 (9th Cir. 1964), we recognized that a person suffering from schizophrenia can have "lucid intervals", but we held in that case that the government had failed to prove that the crime had been committed during one of those intervals.

time.'" *United States v. Alden*, 476 F.2d 378, 383 (7th Cir. 1973), *quoting* II Wigmore on Evidence § 233, at 25 (3d ed. 1940). In *Hartfield*, a Ninth Circuit case which addresses the issue, this court said, "[E]vidence of a defendant's mental condition reasonably near the time when the offense is committed, whether before or after," is admissible. 513 F.2d at 260.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable * * * ." Fed.R.Evid. 401. The fact that is of consequence is the defendant's mental condition at the time of the killing. *United States v. Shackelford*, 494 F.2d 67 (9th Cir.), *cert. denied*, 417 U.S. 934, 94 S.Ct. 2647, 41 L.Ed.2d 237 (1974). The defense says that the medical reports do have a tendency to show what his mental condition is now, has been for several years, and probably was at the time of the killing. If the disease was chronic in 1972 through 1978 (as the reports indicate), and if it was chronic in 1970 and 1971 (as the testimony of the defense witnesses indicated), then the continuity of the illness at the time of the killing is more probable. The evidence was relevant.

■ Relevant evidence is generally admissible unless otherwise provided. Fed.R. Evid. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed * * * by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. The government says the evidence is cumulative, but does not say why. Cumulative evidence replicates other admitted evidence. *See United States v. Elksnis*, 528 F.2d 236, 238–39 (9th Cir. 1975) (exclusion of relevant, but cumulative, evidence is within discretion of the trial court). The defense is chronic mental disease. Dorland's Illustrated Medical Dictionary, 24th ed., defines "chronic" as "[p]ersisting over a long period of time". In this circumstance, the fact that the diagnosis is repeated does not render the evidence cumulative, but is probative of *duration* and is not offered merely to prove

*existence.* Here, the balancing of the probative value against the considerations of time must be done with a view to the explicitly liberal policy of admitting evidence of mental condition. "[T]he goal of expediting the trial must not be allowed to interfere with the defendant's right to develop fully and completely the many complex and often tenuous circumstances that may shed light on his plea." *United States v. Smith*, 507 F.2d at 712 (cited by this court in *United States v. Hartfield*, 513 F.2d at 260). Considerations of delay do not substantially outweigh the probative value of the excluded evidence.

■ A trial judge had broad discretion to determine the admissibility of evidence, and a ruling will be overturned only for abuse of that discretion. *United States v. Kearney*, 560 F.2d 1358, 1369 (9th Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). That discretion is abused if the exclusion "prejudicially deprived [the defendant] of material evidence critical" to his defense. *United States v. Hartfield*, 513 F.2d at 260. The government says that Ives was not prejudiced, because the defense made some use of the excluded records in a hypothetical question and in argument.

The jury heard, for example, the following testimony.

"Q Do you have any information, Doctor [McCarthy] pertaining to any medication that was given to Mr. Ives from 1973 to 1978?

"A When I made a diagnosis in 1971 of chronic undifferentiated schizophrenic or chronic paranoid schizophrenic, I didn't feel that this diagnosis would change over the years, these people just do not get well."

To rebut the evidence of continuing mental illness, the government offered substantial evidence that, at the time of the killing, Ives did not, as a result of mental disease or defect, lack substantial capacity either to appreciate the criminality or wrongfulness of his conduct or to conform his conduct to the requirements of the law. *Wade v. United States*, 426 F.2d 64 (9th Cir. 1970) (en banc).

It was the government's theory that even a person with a long history of schizophrenia, paranoid type, nonetheless could be, from time to time, responsible for his conduct. There was evidence, which the jury had the right to believe, which tended to carry the government's burden of proof on this issue. Some of the evidence most damaging to the defense came from members of the defendant's immediate family.

■ We believe the court was in error in excluding the proffered evidence, even though it was more remote in time than any evidence of mental illness used in any case cited to us. However, it is not error alone, but prejudicial error, that will justify reversal. At first blush, prejudice might appear to be present any time a defendant in a murder case is denied the opportunity to place before the jury some impressive documents prepared by doctors and hospitals which show a continuing state of mental disease. On the whole record, however, the prejudice is much less obvious.

■ The jury knew of Ives' long periods of mental hospitalization. The jury knew full well that Ives suffered from a severe chronic mental disorder. Where the experts disagreed, and what the jury had to decide, was how to apply the legal definition of insanity for criminal purposes to this particular defendant.

Some experts said Ives was legally insane under the appropriate legal formulation; others said he was mentally diseased and dangerous, but that his condition did not fit the legal formulation. On this narrow question, the exclusion of the more remote hospital records was not prejudicial. That evidence was equally useful to both sets of experts. The excluded testimony tended to prove what no one denied: that Ives was then, for many years had been, and was at the time of the killing suffering from severe chronic mental disease. The doctors were all aware of that evidence, but they viewed it differently, according to their interpretations of the legal formulation of the rule in *Wade v. United States, supra,* and similar cases. On the score of helping the jurors evaluate the testimony of the doctors, the admission of the excluded evidence would not have had the pro-defendant impact upon the jury the defendant would now have us assign to it.

Other errors are charged to the giving of certain instructions and the refusal of others. While the instructions were not a model to be published here with the approval of this court, they were free from reversible error.

■ One requested instruction was drawn on the theory that Ives was so mentally incapacitated that he thought he had to kill the victim in self-defense, even though no rational person would have imagined that self-defense was necessary. The theory is ingenious, but was merely an embellishment on the general theory of paranoid mental irresponsibility upon which the defense was necessarily based. The instruction would have added nothing to the analysis the jury had to make under the standard formulation of the test for criminal responsibility when mental defect or disease is asserted as a defense. We find no error in refusing the various special instructions proposed by the defense.

Affirmed.