UNITED STATES of America,
Plaintiff/Appellee,

v.

Allen Gordon SIMS,
Defendant/Appellant.

No. 79–1507.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1980.

Decided Sept. 9, 1980.

Michael D. Abzug, Deputy Federal Public Defender, Los Angeles, Cal., argued, for defendant-appellant.

Suzanne B. Conlon, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FARRIS and POOLE, Circuit Judges, and MacBRIDE,* District Judge.

* Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation.

MacBRIDE, District Judge:

On January 1, 1972, defendant Sims and a woman identified as Ida Patrice Robinson who remains a fugitive hijacked PSA Flight 902 between Sacramento and Los Angeles. Approximately one hour after the hijacking began, the passengers were released in Los Angeles. The plane with its full crew and four other stewardesses who happened to be on the flight flew first to Tampa, Florida, and then to Havana, Cuba, under the direction of the hijackers. In Havana, the hijackers surrendered to Cuban authorities, and Flight 902 returned to the United States. Sims and Robinson were indicted for air piracy under 49 U.S.C. § 1472(i)(1) on August 2, 1972. Almost seven years after the hijacking, on December 21, 1978, Sims was arrested in Jamaica and returned to the Central District of California for trial.

On February 27, 1979, Sims was found guilty after a one-day jury trial. He appeals from that conviction, contending that the district court erred in refusing to issue certain out-of-district subpoenas, in denying discovery motions, and in denying a motion for continuance of the trial. We reverse.

## OUT–OF–DISTRICT SUBPOENAS

Sims appeals from the denial of his timely application for out-of-district subpoenas under Rule 17(b) of the Federal Rules of Criminal Procedure. He urges that the testimony he sought to procure concerning his inpatient treatment for mental disorders less than five months before the hijacking was essential to the presentation of an insanity defense. The district court denied the application on the ground that the testimony sought "would not be relevant because it is five months prior to [the hijacking]." RT at 25. We reverse and remand.

Sims was treated at Mt. Zion Hospital in San Francisco between August 26 and 28, 1971, by two psychiatrists, Drs. Renik and Steinman. He was not discharged from the ward but, instead, was arrested and taken

from the hospital by the police. The summary of treatment dictated by Dr. Renik stated that the "diagnostic impression" was "paranoid character" and that the doctors believed Sims would benefit from additional treatment; his condition when he left the hospital was unchanged. Based on this summary which detailed various mental problems,[1] Sims sought to present an insanity defense through the testimony of either Dr. Renik or Dr. Steinman, and a local forensic psychiatrist, Dr. Ronald Markman, as well as a Mrs. Guice from the Mt. Zion Medical Records Department. Sims proposed to call one of the Mt. Zion doctors, depending on which one would be less inconvenienced by the appearance, to testify concerning his treatment at Mt. Zion. Next, Dr. Markman would be called to correlate the Mt. Zion diagnostic impression of paranoid character to the governing Ninth Circuit test defining insanity. Mrs. Guice's testimony would authenticate the medical records from Mt. Zion.

Drs. Renik and Steinman and Mrs. Guice were located in San Francisco, and they declined to appear voluntarily. Accordingly, Sims filed an application for out-of-district subpoenas under Rule 17(b) which provides in part:

The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory

showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

F.R.Crim.P. 17(b). The Declaration of Counsel accompanying the application quoted from the Mt. Zion summary and explained the intended use and expected testimony of the witnesses. This information was repeated at oral arguments when the court considered the application, and the court's attention was directed to the copy of the Mt. Zion summary filed with the defendant's trial brief.

■ The sole issue here is whether Sims made a satisfactory showing that the presence of the witnesses was "necessary to an adequate defense."[2] We adopt the standard now followed by the Fifth, Sixth and District of Columbia Circuits.

[I]f the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous.

*Greenwell v. United States,* 317 F.2d 108, 110 (D.C.Cir.1963); *accord, United States v. Hegwood,* 562 F.2d 946, 953 (5th Cir. 1977), *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1274, 55

1. The summary stated in part:
*PAST HISTORY:*
Past history is difficult to determine. Patient was grandiose and made excuses for his obvious wish to stay in the hospital. He claimed to have a Nob Hill apartment, and although his support system could not be well assessed it was our impression that it was not capable to deal with the stress that he was undergoing at this time. There was much history of an impulse control problem in terms of patient's anti-sexual behavior,— shoplifting, fights, etc. The patient claimed that his mother is an established gynecologist and his father a supreme court judge in New York.

*COURSE OF TREATMENT:*
The patient was admitted to the ward on inpatient status. The following formulation emerged, picturing him as caught between

two competing anxieties: On the one hand his interactions with people made him anxious in a way it was difficult for him to understand (fears of homosexual impulses seem just below the surface, and these are defended against by his becoming angry which resulted in a fear of his loss of control of angry impulses) as a result patient withdrew and got scared of becoming lonely. On the other hand, his withdrawal threatened strong infantile demands.

*DIAGNOSTIC IMPRESSION:*
Paranoid character—rule out paranoid schizophrenia.
*CONDITION AT DISCHARGE:*
Unchanged.
Record at 62–63.

2. That Sims is financially unable to pay the fees of the witnesses is not contested.

L.Ed.2d 787 (1978); *United States v. Barker*, 553 F.2d 1013, 1020 (6th Cir. 1977).

■■■ The test for establishing an insanity defense in the Ninth Circuit is as follows:

a defendant is insane within the meaning of the law if, at the time of the alleged criminal conduct, as a result of mental disease or defect, he lacked substantial capacity to conform his conduct to the requirements of the law or to appreciate the wrongfulness of his conduct.

*United States v. Monroe*, 552 F.2d 860, 863 (9th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1009 (1977), *following Wade v. United States*, 426 F.2d 64 (9th Cir. 1970) (en banc). Although insanity must exist at the time of the offense, evidence of mental condition before or after the offense may be used to support an inferential conclusion that the defendant was insane at the crucial moment.

In *United States v. Ives*, 609 F.2d 930 (9th Cir. 1979), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 605 (1980), the defendant was charged with a 1971 murder on an Indian reservation. During his third trial, in 1978, the district court excluded all medical records after 1973 on the ground that they were too remote in time. On appeal, this circuit held that the evidence should have been admitted:

A mechanical exclusion based on remoteness in this case exalted form over substance. The ruling denied the defendant an opportunity to present colorably probative evidence bearing upon the chronic state of the mental disability from which he claimed he was suffering at the time of the event in question.

When insanity is presented as a defense, "the trial judge should be free in his admission of all possibly relevant evidence." *United States v. Hartfield*, 513 F.3d 254, 260 (9th Cir. 1975). . . . Possibly relevant evidence includes evidence of the defendant's mental condition over a period of time. "[S]ince conditions of mental disease are more or less continuous, '[i]t is therefore proper, in order to ascertain * * * [the existence of mental disease] at a certain time, to consider its existence at a prior or subsequent time.'" *United States v. Alden*, 476 F.2d 378, 383 (7th Cir. 1973), *quoting* II Wigmore on Evidence § 233, at 25 (3d ed. 1940).

*Id.* at 932–33. Although the *Ives* district court erred in excluding the evidence, the error was not so prejudicial as to require reversal under the circumstances. The jury had learned of Ives' long periods of hospitalization and "knew full well that Ives suffered from a severe chronic mental disorder." *Id.* at 934.

The *Ives* court relied, as does Sims, on the 1975 decision in *United States v. Hartfield*, 513 F.2d 254 (9th Cir. 1975). Hartfield had been arrested within minutes of the attempted robbery for which he was tried; shortly after his arrest, he exhibited aberrant behavior and was hospitalized. The trial court excluded the testimony of witnesses concerning defendant's behavior and the medical records from his hospitalization, reasoning that the evidence was immaterial unless the defense offered expert testimony to connect Hartfield's post-arrest behavior to his mental condition at the precise time of the offense. This court reversed, holding: "Only slight evidence is sufficient to raise the issue as to insanity for submission to the jury." *Id.* at 259. The court continued:

"Any evidence of aberrant conduct or action, *whether before or after the act charged,* is accordingly admissible . . ,"" *United States v. Smith*, 507 F.2d 710 (4th Cir. 1974) (emphasis added), and the trial judge should be free in his admission of all possibly relevant evidence. . . .

Expert testimony as to the defendant's mental condition at the *exact time* of the offense, while desirable from the defendant's standpoint, is not necessarily essential. Evidence of a defendant's mental condition reasonably near the time when the offense is committed, whether before or after, is also admissible and may be sufficient to support an inferential con-

clusion as to the defendant's mental status at the critical time.

*Id.* at 260.

■ Under the authority of *Ives* and *Hartfield*, the district court erred in ruling that the testimony of the witnesses sought by Sims would not be relevant because it concerned his mental state five months before the hijacking.

■ A motion under Rule 17(b) is addressed to the sound discretion of the trial court, and a defendant does not have an absolute right to subpoena witnesses at government expense. *United States v. Martin,* 567 F.2d 849, 852 (9th Cir. 1977); *United States v. Maynard,* 485 F.2d 247, 248 (9th Cir. 1973). On the other hand,

> it is important to bear in mind that the right of an indigent criminal defendant to subpoena witnesses rests not only on Rule 17(b), but also on the Sixth Amendment right to compulsory process . . . and on the Fifth Amendment right not to be subjected to disabilities by the criminal justice system because of financial status. . . . The latitude afforded the district court in making this determination is therefore considerably narrower than it is with respect to other decisions committed to its discretion.

*United States v. Barker, supra* at 1019; *accord, United States v. Hegwood, supra* at 952–53; *United States v. Bennett,* 539 F.2d 45, 53 (10th Cir.), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976). Under the standard we have adopted, the trial court's discretion is limited to determining whether issuing the subpoena would constitute an abuse of process.

■ A trial court's refusal to issue a subpoena under Rule 17(b) is clearly appropriate when the request is untimely, *e. g., United States v. Jones,* 487 F.2d 676, 679 (9th Cir. 1973); *United States v. Bottom,* 469 F.2d 95 (9th Cir. 1972), when the testimony sought is cumulative, *e. g., United States v. Henry,* 560 F.2d 963, 965 (9th Cir. 1977); *Wagner v. United States,* 416 F.2d 558, 564 (9th Cir. 1969), *cert. denied,* 397 U.S. 923, 90 S.Ct. 915, 25 L.Ed.2d 104 (1970), when the defendant has failed to make a

satisfactory showing as required by the Rule, *e. g., United States v. Bottom, supra; Wagner v. United States, supra,* or when the requested subpoena would in some other way constitute an oppressive and unreasonable use of the process of the court, *e. g., Amsler v. United States,* 381 F.2d 37, 51 (9th Cir. 1967). There is nothing in the record to justify denial of the subpoenas here on any of these bases.

Accordingly, we reverse and remand for a new trial.

## REMAINING ISSUES ON APPEAL

■ Having held that the defendant is to be retried, the remaining issues on appeal need not be addressed in depth, although a few comments are appropriate. If defendant's counsel establishes his inability to learn the whereabouts of eye witnesses to the hijacking through normal investigative techniques, then the United States or, if a motion must be brought, the trial court could consider ordering the disclosure of the names and addresses of such witnesses or, if the identity of the witnesses needs to be protected, directing the Sims' counsel be permitted to contact the witnesses through third parties. Reasonable restrictions on counsel's use of such information are proper, but "it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Dennis v. United States,* 384 U.S. 855, 873, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966) (footnote omitted); *see United States v. Castillo,* 615 F.2d 878, 882 (9th Cir. 1980). Requests for disclosure of the identity and whereabouts of witnesses must be considered in the light of the circumstances of the particular case, and a seven-year old hijacking witnessed by a disparate group of passengers whose starting airports and destinations are unknown presents a discovery dilemma quite unlike more typical criminal proceedings in which the defense can learn the identity of witnesses through available investigative techniques.

One other issue raised on appeal deserves comment. Shortly after arraignment, once

defense counsel had identified the first of two psychiatrists who would examine the defendant, the United States provided that psychiatrist with copies of 36 FBI interviews selected from the approximately 150 interviews with passengers and crew on Flight 902. The United States did so without prior notice to defense counsel, and the psychiatrist was provided the interviews for his use only, so that he could not show them to defense counsel. The Government's argument that this restriction did not preclude counsel from freely discussing the facts of the case with the psychiatrist is disingenuous at best. The facts of the hijacking were never in dispute, and the essence of the defense turned on Sims' state of mind. Subsequently, the United States refused to permit the second defense psychiatrist to examine the 36 interviews. Although the district court ordered on the day before trial that defense counsel be permitted to review the interviews revealed to the first psychiatrist, that order specified that the interviews were thereby made available for the exclusive use of defense counsel. The defendant urges that these actions by the United States and the orders of the district court, both of which appear to have unnecessarily impeded consultation between defense counsel and the psychiatrists engaged by the defense, violated his due process rights. Any impediment to free consultation between defense counsel and defense psychiatrists in preparation for and in connection with trial is cause for concern. Nevertheless, no purpose would be served by belaboring this matter in view of the result we reach in connection with the Rule 17(b) issue.

The judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.