953 F.2d 1389
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Javid NAGHDI, aka David Naghdi, Defendant-Appellant.
 No. 90-50300.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 10, 1991.
Decided Jan. 30, 1992.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges
 MEMORANDUM*
 Javid Naghdi appeals his conviction by a jury on nine counts of wire fraud in violation of 18 U.S.C. § 1343. He also appeals his fourteen year sentence. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.
 * Appellant's conviction on nine counts of wire fraud arose out of an elaborate scheme to manufacture and sell counterfeit pharmaceutical drugs. The scheme comprised two transactions (the Belrico deal and the Owens-Minor deal), neither of which was ever completed. The Belrico deal was not completed because the victims were never allowed to inspect the pharmaceuticals they were purchasing. The Owens-Minor deal, which appellant transacted with an undercover government agent, ended with appellant's arrest. Both deals were set in motion after appellant had pled guilty on June 26, 1987 to several charges arising out of a similar scheme to manufacture and sell counterfeit pharmaceuticals. Both deals were transacted while appellant was a fugitive from justice having failed to appear for sentencing on the 1987 charges.
 
 
 1
 At trial, appellant raised the defense of public authority, claiming that he acted with the imprimatur of the Central Intelligence Agency, which he asserted employed him to serve as a contact with the Iranian government in negotiations over the sale of arms to that country. The conduct for which he was prosecuted, he maintained, was part of a CIA plot to cover up those arms sales.
 
 II
 
 2
 Appellant's first claim is that the district court violated his sixth amendment right to compulsory process when it refused to issue Rule 17(b) subpoenas to several high government officials whose testimony appellant alleged was necessary to support his "public authority" defense. The only evidence appellant offered to show that the testimony was "necessary" to his defense, as required by Rule 17(b), was his attorney's ex parte affidavit containing allegations based on information and belief. The district court agreed to issue the subpoenas only if appellant would swear to the truth of those allegations. Appellant refused to swear to the information contained in the affidavit and the court refused to issue the subpoenas. We review a district court's ruling regarding Rule 17(b) subpoenas for abuse of discretion. United States v. Sims, 637 F.2d 625, 629 (9th Cir.1980). We find no abuse here.
 
 
 3
 At the outset, we note that there is no merit to appellant's assertion that swearing to the truth of the information in his attorney's affidavit would have meant relinquishing his fifth amendment right against self-incrimination to protect his sixth amendment right to compulsory process. In Simmons v. United States, 390 U.S. 377 (1968), the Supreme Court held that a criminal defendant's fourth amendment rights cannot not be conditioned on his abandonment of his fifth amendment rights. Thus a defendant's testimony in support of a motion to suppress evidence may not be admitted against him at trial on the issue of guilt. But Simmons does not apply here because the district court's agreement to seal counsel's affidavit until after sentencing would have prevented the government from using appellant's statement against him at either trial or sentencing. That the statement could be used against Naghdi in a separate prosecution for perjury does not implicate the Simmons rule.
 
 
 4
 Nor did the court violate appellant's sixth amendment right by abusing its discretion not to issue the subpoenas. The language of Rule 17(b) requires that a defendant make a "satisfactory showing ... that the presence of the witness is necessary to an adequate defense." And we have held that it is within the discretion of the district court to refuse to issue subpoenas at government expense if it concludes that the defendant has failed to "allege the witnesses' testimony which, if true, would be relevant to any issue of the case." United States v. Merrill, 746 F.2d 458, 465 (9th Cir.1984), cert. denied, 469 U.S. 1165 (1985). If a defendant makes no "plausible showing" that the witnesses he seeks to subpoena would offer testimony "both material and favorable to his defense," then his sixth amendment right will not be violated if the court refuses to issue the subpoena. United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982); see also Sims, 637 F.2d at 629.
 
 
 5
 Appellant never alleged what testimony he expected from the government officials he sought to subpoena. Appellant did not allege this testimony in his 17(b) requests. Nor would he recite for the court specific facts to support his claim that he believed his actions were sanctioned by the CIA. Instead he offered only his attorney's ex parte affidavit, based on information and belief, which did not "allege the witnesses's testimony," Merrill, 746 F.2d at 465, but only facts that the court thought "inherently incredible." Under these circumstances, in which the district could have refused altogether to issue the subpoenas, we can hardly say the court abused its discretion by requiring corroboration from appellant in the form of a sworn statement. See Sims, 637 F.2d at 627 (citing Greenwell v. United States, 317 F.2d 108, 110 (D.C.Cir.1963) (17(b) subpoenas need not be issued if the court finds the allegations supporting the subpoenas to be "inherently incredible on their face").
 
 III
 
 6
 Appellant next asserts that the trial court erred by admitting evidence of the conduct to which appellant pled guilty in 1987, in violation of Federal Rule of Evidence 404(b). Appellant claims that evidence of his prior conduct was admitted to show that he acted in conformity with that conduct on this occasion. But the court found that the evidence of appellant's prior conduct was relevant to the issue of his intent and admitted it for that purpose alone. Despite appellant's assertion that the court's 404(b) ruling is a mixed question of law and fact that should be subject to de novo review, our cases are clear that a district court's decision to admit evidence of a prior act under Rule 404(b) is reviewed for an abuse of discretion. See e.g., United States v. Rubio-Villareal, 927 F.2d 1495, 1503 (9th Cir.1989). We find no abuse here.
 
 
 7
 Rule 404(b) bars the admission of other crimes or bad acts "to prove the character of a person in order to show conformity therewith." But it does permit the introduction of such evidence to prove intent. Fed.R.Evid. 404(b). We have articulated a four-part test for determining whether evidence of prior crimes or bad acts is admissible to show intent. First, there must be sufficient proof for a jury to find that the defendant committed the prior act. Second, the act must not be too remote in time from the crime charged. Third, the act must be introduced to prove a material element of the crime charged. Fourth, the act must be similar to the crime charged. United States v. Spillone, 879 F.2d 514, 518-520 (9th Cir.1989), cert. denied, 110 U.S. 210 (1990).
 
 
 8
 The first three of these requirements are easily satisfied in this case. First, appellant's guilty plea was sufficient proof that he engaged in the 1987 fraud. Second, the fraud charged here began within a year of the 1987 fraud. Third, the 1987 fraud was introduced to prove a material element of the crime--intent. Intent was very much at issue given appellant's defense that he was engaged in a government plot to sell arms, not an illegal counterfeiting scheme.
 
 
 9
 Appellant focuses his challenge to the admission of this evidence on the court's conclusion that the fourth requirement--similarity--was satisfied. But appellant's conduct in the 1987 fraud was indeed quite similar to the conduct with which he was charged here. In each case, it arose out of illegal transactions designed to defraud individuals through the sale of counterfeit pharmaceuticals. In each case, the fraud operated in the same manner. The law of this circuit is clear that this is sufficient similarity to justify the admission of the prior bad acts to prove intent. See id. at 519; see also United States v. Evans, 796 F.2d 264, 265 (1986).
 
 
 10
 Contrary to appellant's assertion, we have not required that the mental state attaching to the prior crime or bad acts be identical to the mental state attaching to the crimes charged. So it does not matter that in the first case appellant was charged with crimes--conspiracy to defraud the government, trafficking in counterfeit goods, and several regulatory offenses--that require different mental states than that attaching to wire fraud. The counterfeiting schemes underlying both sets of charges were virtually identical and thus evidence of the former was probative of appellant's mental state in the latter. See United States v. Nadler, 698 F.2d 995, 1000 (9th Cir.1983)
 
 IV
 
 11
 Appellant next alleges that even if admission of his prior bad acts was admissible under Rule 404(b), both that evidence and evidence that he was a fugitive should have been excluded under Rule 403 because its probative value was substantially outweighed by the prejudice appellant would suffer if the evidence were admitted. A district court has wide discretion to weigh the probative value of a piece of evidence against the prejudice it would cause. United States v. Nadler, 698 F.2d 995, 1000 (1983). We cannot conclude that the court abused its discretion by admitting this evidence.
 
 
 12
 For the reasons set forth above, evidence of the first fraud was quite probative of appellant's intent in this case. On the other hand, nothing about the evidence suggests that its admission would be unduly prejudicial, especially when the 1987 fraud seems to have been much smaller than the one charged in this case. With respect to appellant's fugitive status, the court found it to be probative of appellant's reasons for placing a variety of "road blocks" in front of the Belrico deal; specifically, whether he acted as he did because he did not want the deal to go through or because he did not want drugs traceable to him to enter the United States. When appellant elicited testimony to suggest that he set up these "road blocks" in order to prevent the fraud from reaching fruition, the evidence of his fugitive status became necessary for the government to prove its case. Given that appellant's own defense made his fugitive status highly relevant to the government's case, we cannot conclude that the court's decision to admit this evidence violated the discretion afforded it to balance probative value against prejudice under Rule 403.
 
 V
 
 13
 After oral argument, Appellant filed a motion to file a supplemental brief on a new issue. We grant the motion but reject appellant's argument that United States v. Westerdahl, 945 F.2d 1083 (9th Cir.1991) requires either the reversal of Appellant's conviction or remand for an evidentiary hearing.
 
 
 14
 The government's refusal to grant immunity is grounds for reversal if that refusal amounts to prosecutorial misconduct. In order to make out a showing of misconduct, the defendant must show that the testimony of the witness was relevant and that the government distorted the fact finding process by not granting the witness immunity. Westerdahl, 945 F.2d at 1086.
 
 
 15
 Prior to Westerdahl, this Circuit seemed to require a showing that the government "took affirmative actions to prevent defense witnesses from testifying." Id. In Westerdahl, however, the court held that "misconduct is not confined solely to situations in which the government affirmatively induces a witness not to testify in favor of a defendant." Id. Westerdahl does not change the rule that a court must find prosecutorial misconduct. It merely states that prosecutorial misconduct is not confined to circumstances in which the government actively discourages a witness from testifying. Appellant suggests that the government may have engaged in misconduct by refusing to indict Jack Russell. He argues, essentially, that because there was evidence that Russell engaged in the same conduct for which Appellant was indicted, the government's failure to indict Russell "created a prima facie case that the government was not indicting Russell in order to prevent him from testifying for Naghdi."
 
 
 16
 The government's failure to indict Russell is hardly a sufficient basis for an evidentiary hearing, let alone reversal. First, the government's decisions about whether or not to indict are based on myriad factors. Unlike the selective doling out of immunity at issue in Westerdahl, the decision not to prosecute does not imply an intent to distort the fact-finding process, even when the government has enough evidence to indict. Indeed, Russell could just have well plead the Fifth even if he had been indicted. Second, a ruling that prosecutorial misconduct may be presumed from the government's failure to indict a potential witness would interfere with prosecutors' ability to exercise discretion over indictments. Courts, obviously, have no business telling prosecutors who they should indict. We conclude that the mere decision not to indict is insufficient to support a claim of prosecutorial misconduct.
 
 VI
 
 17
 In addition to arguing that his conviction should be overturned, appellant contends that his sentence should be reduced because the district court based its application of the United States Sentencing Guidelines on several erroneous factual findings and because it applied the 1989 Guidelines in violation of the Constitution's prohibition against ex post facto law making. We review the district court's factual findings for clear error. United States v. Howard, 894 F.2d 1085, 1087 (9th Cir.1989). We review the constitutionality of its application of the Guidelines de novo. United States v. Restrepo, 903 F.2d 648, 651 (9th Cir.1990).
 
 
 18
 * First we review several factual findings that caused the court to adjust appellant's sentence upward several levels from the base offense. When adjusting a sentence upward, a district court must find by a preponderance of the evidence that the facts supporting the upward adjustment exist. United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.1991) (en banc). Applying this standard, we cannot conclude that any of the district court's factual findings supporting an upward adjustment were clearly erroneous.
 
 
 19
 * The district court followed the suggestions of the probation officer and adjusted appellant's sentence upward from the base offense level for wire fraud to reflect the risk of physical or psychological harm to any person who used the counterfeit drugs manufactured and sold by appellant. See U.S.S.G. § 2F1.1, comment. (n. 9(c)). The necessary foundation for this adjustment was the court's finding that the drugs actually did exist. Appellant challenges the sufficiency of the evidence to support this finding because no drugs were ever found.[1] But though there was no direct evidence that the drugs ever existed, the record sets forth ample circumstantial evidence that the drugs did indeed exist. In the past we have upheld findings that a defendant manufactured drugs based on evidence quite similar to the evidence upon which the district court concluded that the counterfeit pharmaceuticals existed. See e.g., United States v. Ray, 930 F.2d 1368, 1372 (9th Cir.1990 (evidence of tools, materials, and formulas for manufacturing methamphetamine sufficient to prove that drugs were manufactured). We cannot say that the district court's conclusion that the drugs existed was clearly erroneous.
 
 2
 
 20
 The district court also accepted the probation officer's recommendation that the sentence be adjusted upward to reflect the enormity of the fraud; appellant intended to defraud his victims out of over 600 million dollars, approximately 579 million of which was represented by the Belrico deal. Appellant challenges this adjustment claiming the evidence was insufficient to establish that he possessed intent to defraud in that deal.
 
 
 21
 Appellant's argument turns on an interpretation of his own conduct throughout the course of the Belrico deal. That the evidence shows that the deal fell through because appellant prevented his victims from inspecting the drugs does not undermine the court's conclusion that appellant possessed an intent to defraud. The court found that appellant hindered inspection in both deals not to prevent the fraud from reaching fruition, but to prevent a revelation that the drugs were phony. We cannot say that this finding, which supported the court's conclusion that appellant possessed an intent to defraud, was clearly erroneous.[2]
 
 3
 
 22
 The district court adjusted appellant's sentence upward an additional four levels, pursuant to U.S.S.G. § 3B1.1, because it found that appellant was the organizer of an extensive criminal activity. Appellant asserts that this finding was erroneous because the evidence was insufficient to prove that he organized five or more participants in the Owens-Minor and Belrico deals. Appellant claims that the district court reached its conclusion that section 3B1.1(a) applies by improperly considering participants in the 1987 scheme who played no role in the fraud for which he is charged here. Appellant's characterization of the court's finding is erroneous.
 
 
 23
 Though neither party raised the issue, we note at the outset that there is no problem with applying section 3B1.1 to this case under our recent ruling in United States v. Anderson, 942 F.2d 606 (9th Cir.1991) (en banc ). In Anderson we held that section 3B1.1 applies only when the offense "involves more than one person who is criminally responsible for the commission of the offense." Id. at 10382. There is no dispute between the parties that there was at least one other participant in this fraud who could be held criminally responsible. The government has asserted, and appellant has conceded, that a man named Jack Russell was a "knowing participant" in the fraud.
 
 
 24
 Having concluded that the application of section 3B1.1 in this case does not run afoul of our ruling in Anderson, we turn to appellant's contention that the facts do not support the district court's application of section 3B1.1(a). Appellant focuses on a different aspect of section 3B1.1(a) than that focused on by the court, and consequently ignores the factual finding upon which the court based its application of this guideline. A four-level adjustment to a sentence is permissible not only when a court finds that the defendant organized a criminal activity that "involved five or more participants," but also when it finds that a defendant organized a criminal activity that was "otherwise extensive." U.S.S.G. § 3B1.1(a). Comment 2 to section 3B1.1 makes clear that when "assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." Here the court clearly relied on the otherwise extensive prong and found that appellant would have had to mobilize a number of individuals in order to carry out a fraud of this type and proportion. We cannot say that this finding was clearly erroneous. See United States v. Baker, 894 F.2d 1083, 1085 (9th Cir.1990).
 
 4
 
 25
 The district court concluded that the Belrico and Owens-Minor frauds were separate from the fraud for which appellant was prosecuted in 1987, and that therefore the sentences in the two cases should run consecutively. The court described the 1987 fraud, which was comprised of different transactions and directed towards different victims than the later frauds, as a "dry run" for those frauds. Appellant challenges this finding as inconsistent with the court's consideration of the 1987 fraud when it made its finding that appellant was the organizer of a criminal activity. For the reasons set forth above, appellant's interpretation of the court's findings in support of the criminal organizer adjustment is ill founded. Because there is nothing to suggest that the court considered the 1987 deal when it applied section 3B1.1(a), there is no inconsistency between it's finding that appellant was the organizer of an extensive criminal activity and its finding that the 1987 fraud was distinct from the frauds that are the subject of this case. Thus the court's imposition of consecutive sentences was not error. See U.S.S.G. § 5G1.3.
 
 5
 
 26
 Appellant also contends that the district court erred by refusing to reduce his sentence by three levels pursuant to U.S.S.G. § 2X1.1, which governs attempts. Whether appellant "substantially completed" the fraud, as the district court found he did, is irrelevant. Section 2X1.1 plainly does not apply in this case. By its terms, the section defines the offense level for attempts. It is not a tool for adjusting a defendant's sentence downward where, as here, the defendant is charged with several completed acts of wire fraud conducted in furtherance of a larger fraud but the victim or law enforcement agency prevents the final steps of the larger fraud from being completed. Though none of our cases have addressed the question of whether section 2X1.1 may be employed in the manner suggested by appellant, the answer is patent from the organization of the guidelines. Section 2X1.1 appears in Chapter 2, which governs offenses, not in Chapter 3, which governs adjustments. Nothing could render the function of this section plainer than that fact.
 
 B
 
 27
 Finally, appellant argues that the district court's application of the fraud-loss chart at U.S.S.G. § 2F1.1(b)(1) was ex post facto. Under U.S.S.G. § 2F1.1(a), the base offense level for wire fraud is six and the court added an additional seventeen levels pursuant to the fraud-loss chart. The parties disagree about just how the court arrived at the number seventeen. The parties do not dispute that the court applied the version of the chart in effect in 1988, when appellant committed his crimes, and then departed upward from the eleven level increase provided for by section 2F1.1(b)(1)(L) of that chart for losses greater than five million dollars. They do dispute the process by which the court assessed the appropriate departure. The government maintains that the departure was based solely on a formula derived by the probation officer and set forth in the pre-sentence report. Appellant contends that while the probation officer's formula provided the basis for the court's departure, the court considered the 1989 version of the fraud-loss chart to evaluate the reasonableness of that formula. The court's consideration of the 1989 Guidelines, appellant argues, violates the ex post facto clause of the Constitution.
 
 
 28
 Our review of the record leads us to conclude that the court applied the 1988 Guidelines, departed upward from them based on the formula contained in the pre-sentence report, and looked to the 1989 Guidelines only to evaluate the propriety of the probation officer's formula. We conclude that this procedure raises no constitutional problems. Short of actually applying the 1989 Guidelines to determine appellant's sentence, any use the court made of those Guidelines did not disadvantage appellant, and therefore did not violate his constitutional rights.[3]
 
 
 29
 Article I of the Constitution provides that Congress shall not pass any "ex post facto Law." See U.S. Const. Art. I § 9, cl. 3. In Miller v. Florida, 482 U.S. 423, 430 (1987), the Supreme Court held that application of an amended sentencing guideline is ex post facto if it is retroactive, if it disadvantages the defendant, and if it alters "substantial personal rights" rather than merely changing "modes of procedure." Id. at 430. The Court concluded that in the case before it, the application of an amended guideline that provided for a longer sentence than the original guideline "substantially disadvantaged" the defendant even though the trial court could have imposed the same sentence under a valid departure from the old guidelines. Id. at 432-33. The Court reasoned that while a sentence arrived at via departure would have required justification by clear and convincing reasons, the same sentence derived from direct application of the guidelines would be presumptively valid. Id. The disadvantage a defendant suffers when a court reaches a result by applying a new guideline rather than departing from an old one is the difference between the presumptive legitimacy attached to a sentence determined by the guidelines and the close scrutiny received by a sentence arrived at through a departure. Id.
 
 
 30
 In light of this reasoning, it is clear that even if the district court did consider the amended fraud-loss chart to guide its departure from the old chart, the sentence was not ex post facto. The court reached its result via a departure; thus that result was reviewable, not presumptive, and therefore did not disadvantage appellant. It is true that consideration of the amended Guidelines probably led the district court to look more favorably on the probation officer's proposed formula for departure than it did on appellant's formula. But it would not have lifted from the court its burden of justifying the departure had it been challenged and thus, according to the reasoning of Miller, it did not violate the Constitution.
 
 
 31
 For the reasons set forth in this memorandum we
 
 
 32
 AFFIRM.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At oral argument appellant raised, for the first time, the claim that this adjustment was the product of an ex post facto application of the guidelines. Appellant claims that the district court applied § 2F1.1(b)(4) of the 1989 Guidelines to increase his offense level by two. In its brief, the government indicated that the two level increase was the product of an upward departure from the 1988 Guidelines, warranted under Application Note 9(c). It appears that appellant failed to raise this issue before the district court and he may not raise it for the first time on appeal. See In re Wind Power, Company, 841 F.2d 288, 290 n. 1 (9th Cir.1990). But even if appellant had raised this argument in the district court, his failure to present it in his opening brief to this court violates Fed.R.App.P. 28(a)(4) and constitutes a waiver. See Brady v. Gebbie, 859 F.2d 1543, 1557 (9th Cir.1988)
 
 
 [2]
 Appellant has filed a letter with the court citing additional authority on this issue pursuant to Federal Rule of Appellate Procedure 28(j). Rule 28(j) states: "There shall be reference either to the page of the brief or to a point argued orally to which the citations pertain, but the letter shall without argument state the reasons for the supplemental citations." (emphasis added). The purpose of the rule is to permit a party to cite new authority pertaining to an issue already argued. Appellant's letter, however, attempts to raise and argue a new issue. United States v. Fine, 946 F.2d 650 (9th Cir.1991) is irrelevant to the argument made by Appellant in his brief regarding the court's consideration of the Belrico deal at sentencing; Fine supplies an entirely different rationale for why the Belrico deal should not have been considered. Rule 28(j) does not permit a party to raise a new issue and we therefore decline to consider Appellant's argument
 
 
 [3]
 The cases filed by appellant at oral argument are not to the contrary. Those cases all stand for the proposition that new guidelines cannot be retroactively applied to increase an appellant's sentence. With one exception, they do not consider the of new guidelines to guide a departure. See United States v. Barel, 939 F.2d 26, 43 (3d Cir.1991); United States v. Underwood, 938 F.2d 1086 (10th Cir.1991); United States v. Sweeten, 933 F.2d 765, 772 (9th Cir.1991); United States v. Morrow, 925 F.2d 779, 782 (4th Cir.1991); United States v. Horotunian, 920 F.2d 1040, 1041-1042 (1st Cir.1990). The Morrow court did overturn a sentence because the district court "made reference" to a new guideline in justifying a three level offense increase. And the court did instruct the district court to resentence without "consideration or application" of the new guidelines. 925 F.2d at 782-83. But the court offered no reasons why the mere "consideration" of new Guidelines would violate the ex post facto clause, and to the extent it so holds, we disagree with that holding