**UNITED STATES of America, Appellee,**

v.

**Hector CRUZ–JIMINEZ, Appellant.**

**No. 91–3678.**

United States Court of Appeals, Third Circuit.

Argued June 26, 1992.

Decided Oct. 19, 1992.

Wayne J. Aaron (argued), Erie, Pa., for appellant.

Thomas W. Corbett, Jr., U.S. Atty., Michael L. Ivory (argued), Asst. U.S. Atty., Paul J. Brysh, Office of U.S. Atty., Pittsburgh, Pa. for appellee.

Present: BECKER, HUTCHINSON and ALITO, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellant Hector Cruz–Jiminez (Cruz–Jiminez) appeals a judgment in a criminal action in the United States District Court for the Western District of Pennsylvania convicting him of attempts to possess cocaine and heroin in violation of 21 U.S.C.A. § 846 (West Supp.1992). He contends these convictions should be reversed because the evidence was insufficient to show he intended to possess either controlled substance. Alternately, he seeks a new trial on various grounds or a remand for resentencing. Only one of his arguments requires discussion; namely, that the district court erred in denying his request for a writ of habeas corpus ad testificandum to secure the appearance of a prospective defense witness.[1] Because we are unable, on

---

1. After considering the record and the contentions of the parties, we hold Cruz–Jiminez's argument that the evidence is insufficient to support his two convictions of attempted possession with intent to distribute controlled substances lacks merit. The same is true of his arguments

the present record, to determine whether the witness whose attendance Cruz–Jiminez sought to compel would have given relevant testimony favorable to Cruz–Jiminez on the key issue of intent, we will remand to the district court with instructions to hold a hearing or otherwise arrange to secure the substance of the proposed witness's testimony under oath to determine what the proposed witness is likely to say. If the record, as so developed, indicates the witness will testify as set out in Cruz–Jiminez's proffer, the district court should vacate Cruz–Jiminez's conviction, grant him a new trial and issue the writ to compel the witness's attendance and testimony under subpoena. For reasons discussed *infra,* we note that evidence in accord with the government's version of what the witness is expected to say will not necessarily make his testimony immaterial on the issue of Cruz–Jiminez's intent. On the other hand, if the record then shows that the witness's testimony will not be material to Cruz–Jiminez's defense, the conviction should stand.

## I.

On November 14, 1990, a federal grand jury sitting in the Western District of Pennsylvania indicted Cruz–Jiminez on two counts. In Count I, Cruz–Jiminez was charged with attempt to possess cocaine with intent to distribute in violation of 21 U.S.C.A. § 846. In Count II, he was charged with attempt to possess heroin with intent to distribute in violation of the same statute.

In the district court, counsel for Cruz–Jiminez made several requests for the issuance of a writ of habeas corpus ad testificandum to secure the appearance of a defense witness who was incarcerated at that time. The district court denied these requests. On April 24, 1991, following a jury trial in the United States District Court for the Western District of Pennsyl-

vania, Cruz–Jiminez was convicted on both counts. Based upon these convictions, the district court sentenced Cruz–Jiminez to two concurrent terms of imprisonment for thirty months, followed by a two year period of supervised release. On October 3, 1991, Cruz–Jiminez filed a timely notice of appeal from the judgment and conviction.

## II.

Sometime prior to January 14, 1990, officials at the Federal Correctional Institution at McKean (FCI–McKean) received information from a confidential informant that visitors to inmate Osvaldo Rosa (Rosa) were going to place drugs in the facility's visiting area on January 14, 1990. On that day, acting on this information, prison officials conducted a "shakedown" or search of the visiting area following visitation hours. During the search, officials discovered cassette tapes and a package containing one large bag and twenty-seven smaller bags underneath a vending machine in the vending room adjacent to the facility's visiting area. The bags contained varying quantities of a white powdery substance or substances.

The officials removed the package and performed a field test. The test revealed that the package probably contained two different substances. Subsequent laboratory tests confirmed distinctly segregated quantities of heroin and cocaine.[2] Prison officials then substituted a plastic bag containing an unsegregated quantity of cornstarch for the package containing the controlled substances. This "dummy" bag was sprayed with theft detection powder which, when exposed to an ultraviolet light, would appear on anything that had come in contact with the sprayed item. Prison officials placed the "dummy" bag under one of the vending machines in the corner of the visiting area and then began surveillance of the vending room adjacent to the visiting area.

that the district court erred in giving an erroneous instruction as to the law of attempt and in finding on sentencing that he did not play a mitigating role in the attempted distribution of the controlled substances.

2. The laboratory tests revealed that the large bag contained 14 grams net weight of 51% pure cocaine and the 27 smaller bags together contained 1.4 grams net weight of 67% pure heroin.

The parties' versions of the next significant event differ substantially. On the morning of January 15, according to the testimony of a key government witness, Officer Bebow (Bebow), Cruz–Jiminez, who spoke very little English and was a close associate of Rosa, approached Bebow and, through an inmate-interpreter whom Bebow could not identify, asked to be assigned to clean the visiting area. Cruz–Jiminez, unlike Rosa, had access to the visiting area because part of Cruz–Jiminez's prison work detail involved cleaning in the administration building where the visiting area is located. According to Bebow's version of events, he granted Cruz–Jiminez's request and informed him that he should do the work that evening after dinner.

Cruz–Jiminez alleges that he never asked to clean the visiting area but instead was paged to a prison official's office after dinner on the evening of January 15. He went to the office and through the interpretation of another inmate, believed to be Frank Sanchez (Sanchez), the official instructed him to clean the visiting area that evening. Counsel for Cruz–Jiminez represented that Sanchez's testimony would corroborate Cruz–Jiminez's version of the conversation. On several occasions during the proceedings, the parties discussed whether Sanchez would testify as Cruz–Jiminez represented with the government contending that Sanchez would not testify in accord with Cruz–Jiminez's proffer.

In any event, Cruz–Jiminez reported to clean the visiting area and vending room at approximately 6:30 p.m. on January 15, 1990. Prior to his arrival, officials verified that the "dummy" bag had not been disturbed. Officials observed Cruz–Jiminez through a surveillance camera while cleaning the visiting area, including the area in which the vending machines were located. Two observing officers testified, however, that he spent most of his time cleaning in the vending room and exited and re-entered the visiting area several times with supplies.[3]

According to the surveillance tape and Officer Baird's testimony, after cleaning for over one hour, Cruz–Jiminez entered the supply closet to return some cleaning equipment and then again entered the vending area carrying some white rags. He proceeded to the vicinity of the vending machine where the dummy bag had been placed and reached underneath it with a rag. He brought the rag back, holding it in his hand and set it on a dust mop leaning against the desk in the visiting room. Officer Baird, an observing officer, testified that the rag had a bulge in it consistent with the size and shape of the dummy bag. Cruz–Jiminez exited the visiting area with the rags, including the rag containing the bulge, and proceeded to the supply closet. A prison official immediately verified that the dummy bag had been removed.[4]

When the prison officials confronted Cruz–Jiminez, a black lighting of his hands revealed the invisible theft detection powder that had been dusted on the dummy bag. The official immediately arrested Cruz–Jiminez. In a subsequent search of the supply closet where the cleaning materials Cruz–Jiminez had used were stored, officials discovered the dummy bag stuffed inside the core of a roll of toilet paper.

At trial, counsel for Cruz–Jiminez specifically challenged Bebow's testimony that Cruz–Jiminez had asked to clean the area in which the illegal drugs had been found. On cross examination, Bebow indicated that an inmate had translated the conversation between himself and Cruz–Jiminez, but he could not identify that inmate. Based upon his belief that inmate Sanchez had been the interpreter in question, Cruz Jiminez attempted to secure a writ of habeas corpus ad testificandum for Sanchez, currently an inmate at the Federal Correction-

---

**3.** The jury viewed the surveillance videotape. The appellate record included the videotape and, as such, was viewed by this Court.

**4.** The surveillance videotape does not itself clearly show whether Cruz–Jiminez went directly for the dummy bag underneath the vending machine and discovered it after a purposeful search or merely happened upon it in the course of cleaning beneath the vending machine. It does show he spent a long time cleaning under and around the machine.

al Institution at Englewood, Colorado. In seeking the writ, counsel for Cruz–Jiminez made an offer of proof to the district court, based upon his telephone conversation with Sanchez, that Sanchez would testify in cor-. roboration of the defense's version of the conversation with Bebow and in direct contradiction of Bebow's testimony. Cruz–Jiminez's offer of proof stated that Sanchez was expected to testify as follows:

[A]s he and the defendant were exiting what he was referring to as chow, there was an announcement over the PA, or public address system ... requesting that inmate Cruz–Jiminez report to the lieutenant's office. Mr. Sanchez accompanied him and interpreted the conversation. It is my understanding from my discussion with Mr. Sanchez that it was a conversation between the defendant and Lt. Bebow in which Lt. Bebow asked the defendant if he could clean the visiting room area, to which the defendant responded that he could, and which was followed by a question can he do it right now, to which the defendant responded that he could.

It is my understanding that this witness if called would further testify in that conversation that there was no indication that there were any previous conversations between the defendant and any other officers with regard to him cleaning that visiting room area.

Appendix (App.) at 320–21.

Based on its own telephone conversations with Sanchez and a counselor at FCI–McKean who had been in contact with Sanchez regarding the matter, the government made a contradictory proffer that Sanchez would testify that he did interpret an exchange between Cruz–Jiminez and an officer, but that the officer was not Bebow. After considering this potential conflict in the testimony Sanchez might be expected

to give, the district court denied Cruz–Jiminez's request for a writ of habeas corpus ad testificandum, stating that it was not convinced Sanchez would testify in any way that would be relevant or probative. The district court denied a renewed motion for the writ made later in the proceedings.

### III.

The district court had subject matter jurisdiction over this case pursuant to 18 U.S.C.A. § 3231 (West 1985). We have appellate jurisdiction over the district court's judgments of sentence and the convictions pursuant to 28 U.S.C.A. § 1291 (West Supp.1992). We review the district court's denial of a request for a writ of habeas corpus ad testificandum for abuse of discretion. *See Jerry v. Francisco,* 632 F.2d 252, 256 (3d Cir.1980); *see also United States v. Smith,* 924 F.2d 889, 896 (9th Cir.1991).

### IV.

Cruz–Jiminez contends that the district court abused its discretion in denying his application for a writ of habeas corpus ad testificandum to secure the appearance of Sanchez, a prospective defense witness.

Under 28 U.S.C.A. § 2241(c)(5) (West 1971), a federal court may, in its discretion, issue a writ of habeas corpus ad testificandum to secure the appearance of a state or federal prisoner as a witness in federal court. In addition to section 2241(c)(5), when a defendant in a criminal case requests the issuance of a writ of habeas corpus ad testificandum, constitutional considerations and the procedural considerations of Federal Rule of Criminal Procedure 17(b) both apply.[5]

A criminal defendant has broad rights concerning the production of evi-

---

5. A writ of habeas corpus ad testificandum differs from a simple Rule 17(b) witness subpoena in that the witness subpoena orders the individual whose testimony is sought to attend the trial, whereas a writ of habeas corpus ad testificandum is directed towards the custodian of the potential witness. *United States v. Rinchack,* 820 F.2d 1557, 1567 n. 13 (11th Cir.1987) (citing *United States v. Garmany,* 762 F.2d 929, 934 n. 4

(11th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 811, 88 L.Ed.2d 785 (1986)). Courts have required criminal defendants seeking a writ to comply also with Rule 17(b). *See United States v. Smith,* 924 F.2d 889, 896 (9th Cir.1991); *Rinchack,* 820 F.2d at 1567; *United States v. Rigdon,* 459 F.2d 379, 380 (6th Cir.1972), *cert. denied,* 409 U.S. 1116, 93 S.Ct. 917, 34 L.Ed.2d 700 (1973).

dence. *See Taylor v. Illinois*, 484 U.S. 400, 407–09, 108 S.Ct. 646, 652–53, 98 L.Ed.2d 798 (1988). Among them, as a fundamental element of due process, is the right to offer testimony of witnesses and to compel their attendance, if necessary, in support of a defense to criminal liability. *Washington v. Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967). Thus, the Sixth Amendment to the United States Constitution gives the criminally accused the right to offer testimony of favorable witnesses and "to have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI. The Supreme Court has held that the Compulsory Process Clause includes a criminal defendant's right to present witnesses or evidence in his defense "even though [such a right] is not expressly described in so many words." *Taylor*, 484 U.S. at 409, 108 S.Ct. at 653. The Compulsory Process Clause also protects a defendant from arbitrary rulings that impede presentation of his defense. *Government of the V.I. v. Mills*, 956 F.2d 443, 445 (3d Cir.1992). As we stated in *Mills*, however, this right to present evidence is not absolute. A mere showing by the accused that some relevant evidence was excluded is insufficient; the accused must demonstrate that "the testimony would have been both material and favorable to his defense." *Id.* at 446 (citing *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)). "[E]vidence is material 'only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.'" *Id.* (quoting *Valenzuela–Bernal*, 458 U.S. at 874, 102 S.Ct. at 3450), *see also United States v. LeAmous*, 754 F.2d 795, 798 (8th Cir.) (citation omitted) (district court may be reversed when exceptional *circumstances* indicate defendant's right to complete, adequate and fair trial has been jeopardized), *cert. denied*, 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985). Therefore, to sustain a contention that the district court denied him compulsory process, a criminal defendant must show: (1) he was deprived of the opportunity to present evidence in his favor; (2) the excluded testimony would have been material and favorable to his defense; and (3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purposes. *Mills*, 956 F.2d at 446.

■ When the proposed witness is incarcerated, these basic constitutional rights are implemented through the common law writ of habeas corpus ad testificandum under the authority that 28 U.S.C.A. § 2241(c)(5) and the All Writs Act, 28 U.S.C.A. § 1651(a), gives federal district courts. *See Story v. Robinson*, 689 F.2d 1176, 1178–79 (3d Cir.1982). Section 2241(c)(5) states that "[t]he writ of habeas corpus shall not extend to a prisoner unless ... [i]t is necessary to bring him into court to testify or for trial." 28 U.S.C.A. § 2241(c)(5). Whether it is "necessary" to bring the prisoner into court to testify at trial depends on the nature of the testimony he is likely to give in relation to the substantive law governing the particular offense charged. If the witness's likely testimony is material to a defense that a defendant has properly raised, the witness's testimony becomes relevant and material and the accused is entitled to secure the witness's attendance.

Within constitutional bounds, however, the district court retains discretion in deciding whether to grant the writ. Not every remotely relevant proffer will require the issuance of process to bring an incarcerated witness before the court. If the witness's testimony is only peripherally relevant, cumulative or otherwise insignificant, or if the other evidence against the defendant is so overwhelming that the proffered testimony could not affect the outcome, the proffered testimony is not material and issuance of the writ is not required.

The district court's discretion, however, must be limited by the Sixth Amendment right to have compulsory process for obtaining witnesses in the defendant's favor. *United States v. Hegwood*, 562 F.2d 946, 952 (5th Cir.1977) (citing *Welsh v. United States*, 404 F.2d 414 (5th Cir.1968)), *cert. denied*, 434 U.S. 1079, 98 S.Ct. 1274, 55

L.Ed.2d 787 (1978).[6] Thus, it has been said, "[t]he latitude afforded the district court in making this determination is therefore considerably narrower than it is with respect to other decisions committed to its discretion." *United States v. Sims,* 637 F.2d 625, 629 (9th Cir.1980) (quoting *United States v. Barker,* 553 F.2d 1013, 1019 (6th Cir.1977)). *But see United States v. Greschner,* 802 F.2d 373, 378 (10th Cir.1986) (declining to follow *Sims* and applying instead general abuse of discretion standard), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987); *United States v. Wyman,* 724 F.2d 684, 686 n. 3 (8th Cir. 1984) (same). Without a blanket endorsement of the *Sims* holding, we believe that in determining whether to grant or deny a Rule 17(b) subpoena or a writ of habeas corpus ad testificandum, a district court's discretion is plainly limited by the constitutional considerations involved.

■ Accordingly, we turn to a consideration of the relevance and materiality of Sanchez's testimony to the charges of criminal attempt that the government brought against Cruz–Jiminez. The law of attempt has passed through a number of significant changes in recent years, particularly with respect to the availability of the defense of impossibility, a defense that was once commonly asserted when a dummy substance was used. *See, e.g., United States v. Marin,* 513 F.2d 974 (2d Cir.1975); *United States v. Deangelis,* 430 F.Supp. 327 (D.P.R.1976); *United States v. Heng Awkak Roman,* 356 F.Supp. 434 (S.D.N.Y.), *aff'd,* 484 F.2d 1271 (3d Cir.1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974).

In *United States v. Everett,* 700 F.2d 900 (3d Cir.1983), we held that impossibility was not a defense to a charge of attempted distribution of a controlled substance under 21 U.S.C.A. § 846. We concluded that Congress, in enacting section 846, desired to eliminate the defense of impossibility for attempts to violate our drug laws. *Id.* at

904. Despite our rejection of the impossibility defense, the requirement of *mens rea,* a general prerequisite to criminal liability, remains an essential element of criminal attempt. Therefore, in *Everett,* we went on to address the kind of evidence required to support a finding of intent on charges of attempt to violate the drug control laws. Because intent can only be proven by circumstantial evidence, we held in *Everett* that the government, to support an attempt conviction, must introduce objective evidence corroborating an intent to commit the substantive offense. *Id.* at 908. We also stated that the government must prove that "the objective acts performed [by the defendant], without any reliance on the accompanying *mens rea,* mark the defendant's conduct as criminal in nature[; t]he acts should be unique rather than so commonplace that they are engaged in by persons not in violation of the law." *Id.* at 909 (quoting *United States v. Oviedo,* 525 F.2d 881, 885 (5th Cir.1976)).

*Everett* involved a charge of attempted distribution of a controlled substance that had been replaced by the government with a noncontrolled substance. This Court held that the government met its burden by introducing sufficient evidence of objective acts to "mark his conduct as criminal." *Id.* at 909. We relied heavily on the fact that the government had established that Everett not only promised to sell a controlled substance and that he transferred the substance furtively, but also that he subsequently confessed, identifying the substance he had distributed.[7] *Id.*

Other courts of appeals have held that in order to support an attempt conviction under section 846 the prosecution must prove: (1) the intent, or kind of culpability otherwise required, to engage in the criminal conduct; and (2) conduct constituting a "substantial step" toward commission of the substantive offense that strongly cor-

---

6. It is also limited by the Fifth Amendment right to protection against unreasonable discrimination with respect to those financially able and those financially unable to pay witness fees. *See Hegwood,* 562 F.2d at 952.

7. We found that the latter evidence, the confession, "unequivocally marked his conduct as an attempt to distribute...." *Id.* at 909.

roborates the criminal intent.[8] Other courts of appeals have relied upon the Model Penal Code in formulating their views on attempt.[9] *See United States v. Dworken,* 855 F.2d at 16–17. Under the Model Penal Code:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he ... purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

*Id.* (quoting Model Penal Code § 5.01(1)(c) (1985)); *see also United States v. Kikumura,* 918 F.2d 1084, 1108 (3d Cir.1990) (referring to Model Penal Code § 5.01 as "well-settled principles of the law of attempts"). Under the Model Penal Code, if substantial steps are the only proof of the defendant's criminal intent, then those steps must unequivocally evidence such an intent; "that is, it must be clear that there was a criminal design and that the intent was *not* to commit some non-criminal act." *Dworken,* 855 F.2d at 17. If, however, there is evidence of criminal intent independent of that demonstrated by the defendant's substantial steps in furtherance of his criminal design, "the substantial steps do not themselves need to be unequivocally indicative of criminal intent—they must merely corroborate criminal intent." *Id.* at 17 n. 3

(citing Model Penal Code Part 1, § 5.01, cmt. at 330–31).[10] The Model Penal Code analysis is in accord with our statements in *Everett*—that the government must introduce objective evidence to corroborate the intent to commit the substantive offense in order to support an attempt conviction. *Everett,* 700 F.2d at 908.[11]

In *Everett,* the defendant's confession, his previous promise to sell the substance and subsequent transfer of the substance, furnished independent evidence of intent. In the present case, the government used Bebow's testimony that Cruz–Jiminez had asked to clean the vending room not only to show an objective act that constituted a substantial step in furtherance of the substantive crime that section 846 forbids but also to show Cruz–Jiminez's unequivocal criminal intent. Unlike *Everett,* the government here had no evidence of Cruz–Jiminez's intent independent of the substantial steps he took towards violating section 846. Because the substantial steps Cruz–Jiminez took to accomplish the crime with which he was charged must unequivocally evidence his criminal intent, Bebow's testimony about Cruz–Jiminez's request was important to the government's case. Sanchez's testimony, as Cruz–Jiminez proffered it, directly contradicted Bebow's testimony about Cruz–Jiminez's unequivocally incriminating request to clean the area where the controlled substances were located. A jury might have thought that the

---

**8.** *See United States v. Stone,* 960 F.2d 426, 433 (5th Cir.1992); *United States v. Leiva,* 959 F.2d 637, 642 (7th Cir.1992); *United States v. Watson,* 953 F.2d 406, 408 (8th Cir.1992); *United States v. Leopard,* 936 F.2d 1138, 1140 (10th Cir.1991); *United States v. Pennyman,* 889 F.2d 104, 106 (6th Cir.1989); *United States v. Dworken,* 855 F.2d 12, 17 (1st Cir.1988); *United States v. Delvecchio,* 816 F.2d 859, 861 (2d Cir.1987).

**9.** In *Everett,* we did not, however, refer to the Model Penal Code.

**10.** The law of attempt has been developed largely through "common law." We rely on the Model Penal Code's formulation because it is logical and in conformity with the purposes of the criminal law to require corroborative behavior; without such corroborative behavior, it is difficult to know whether an actor would follow through on a criminal design and "the crime of attempt [should] not be used to 'punish one's

thoughts, desires, or motives, through indirect evidence, without reference to any objective fact.'" *Everett,* 700 F.2d at 908–09 (quoting *Oviedo,* 525 F.2d at 884).

**11.** The *Dworken* analysis indicates perhaps more clearly than we did in *Everett* that the element of intent is not wholly incorporated into the "substantial step" that is also essential to the crime of attempt. Under the rationale of the Model Penal Code, as in *Everett,* a defendant's confession could furnish evidence of criminal intent independent from that demonstrated by any substantial steps taken in furtherance of the crime. Again, as in *Everett,* substantial steps in furtherance of the criminal act can serve to corroborate criminal intent or, in some instances, can themselves supply unequivocal evidence of the requisite intent.

evidence showing that Cruz–Jiminez was an associate of Rosa's and that Cruz–Jiminez removed the dummy package and concealed it inside the core of the roll of toilet paper only reached unequivocal status when coupled with Bebow's testimony that Cruz–Jiminez expressed a desire to clean the room where the drugs had been hidden shortly after one of Rosa's visitors hid them. In other words, without Bebow's testimony, a properly instructed jury might have found that the objective evidence the government introduced did not establish Cruz–Jiminez's intent to commit the underlying substantive offenses of possession with intent to distribute.[12] Such a jury, rejecting any inference that Cruz–Jiminez had prior knowledge of the effort to smuggle illegal drugs into the prison, might have found that the government had not established Cruz–Jiminez's criminal intent beyond a reasonable doubt.

■ In the context of a criminal defendant's right to issuance of a subpoena under Rule 17(b), the United States Courts of Appeals for the Fifth, Sixth, Ninth and District of Columbia Circuits have allocated the burden of producing facts that will justify a subpoena as follows:

> If the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous.

*Smith,* 924 F.2d at 896 (quoting *Sims,* 637 F.2d at 627); *see Hegwood,* 562 F.2d at 953; *Barker,* 553 F.2d at 1020; *Greenwell v. United States,* 317 F.2d 108, 110 (D.C.Cir. 1963). On a criminal defendant's motion for issuance of a writ of habeas corpus ad

testificandum, we believe it is also appropriate to place the burden of proving the necessity of a witness's testimony on the defendant seeking the writ. *See Smith,* 924 F.2d at 896; *Rinchack,* 820 F.2d at 1566; *Wyman,* 724 F.2d at 686; *Hegwood,* 562 F.2d at 952. A defendant's failure to carry this burden "is a legitimate basis to deny a request to procure the presence of a witness." *Rinchack,* 820 F.2d at 1568. Once the defendant has set forth sufficient facts in support of the writ to show that an incarcerated witness's testimony is necessary for an adequate defense, the burden of demonstrating lack of truth, frivolousness or abuse of process passes to the government. *Hegwood,* 562 F.2d at 953. This is not a case in which a defendant's application for a writ of habeas corpus ad testificandum was rejected because it was not supported by an adequate proffer and, therefore, did not constitute a sufficient averment of facts to satisfy Rule 17(b). *See Smith,* 924 F.2d at 896–97 (defendant's application seeking prisoner's testimony to assist in establishing defendant's entrapment defense properly denied as unsupported and conclusory since no proffer was made as to inducement or prisoner's personal knowledge as to defendant's lack of predisposition); *Rinchack,* 820 F.2d at 1568 (denial of writ upheld because request was untimely and defendant did not accompany request with offer of proof as to what witnesses' testimony expected to be); *Rigdon,* 459 F.2d at 380 (no abuse of discretion where defendant merely alleged such testimony was necessary for alibi and impeachment purposes but failed to state particular facts sufficient to satisfy Rule 17(b)). *But see Sims,* 637 F.2d at 629 (district court abused its discretion in ruling testimony of prospective defense witnesses not relevant under Rule 17 because testimony would have concerned defendant's mental state

---

**12.** Had the defendant been charged with attempted simple possession, rather than with attempted possession with intent to distribute, we would face a different situation. With or without Sanchez's proffered testimony, the objective evidence that the defendant intended to possess controlled substances was quite strong. The defendant's actions in removing the package from under a vending machine, surreptitiously removing it from the visiting area, and secreting it inside a roll of toilet paper in a supply closet are difficult to reconcile with any wholly innocent purpose. Here, however, the defendant was not charged with attempted simple possession but attempted possession with intent to distribute, and the proffered testimony of Sanchez is of substantial importance with respect to the element of intent to distribute.

five months prior to crime charged; held testimony relevant in establishing defendant's insanity defense).

As we have demonstrated, Sanchez's proffered testimony was material, not just merely peripherally relevant, to Cruz–Jiminez's defense and so highly likely to change the outcome. Cruz–Jiminez has therefore satisfied his burden by demonstrating that Sanchez's testimony was necessary for an adequate defense. We recognize that the district court may weigh the difficulty in securing a prisoner's testimony against the actual need for such testimony in a given case. *See Smith*, 924 F.2d at 896 (citing *Rinchack*, 820 F.2d at 1568). However, in the present case, the materiality of the evidence, if substantially in accordance with the proffer, far outweighs any burden to the government in producing the witness.[13]

Thus, we have previously held in the context of a civil case that a district court, in exercising its discretion under § 2241(c)(5), should take into account several factors including:

> the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.

*Jerry*, 632 F.2d at 255 (citations omitted) (quoting *Stone v. Morris*, 546 F.2d 730, 735

(7th Cir.1976)). We stated in *Jerry* that these factors must also be weighed in determining whether to issue a writ to secure the appearance of an incarcerated non-party witness when requested by an incarcerated party, the situation present in *Jerry*. *Jerry*, 632 F.2d at 255–56.

One of the factors mentioned in *Jerry* was the probability of success on the merits. *Id.* at 255. The analogue to that factor in a criminal case is the materiality of the incarcerated witness's proposed testimony. *See Rinchack*, 820 F.2d at 1566 (court may also consider materiality and competency of prospective witnesses' testimony as well as timeliness of request). Although proffered testimony of peripheral relevance to a criminal case may not always require the writ, we believe, pursuant to 28 U.S.C.A. § 2241(c)(5), that materiality is certainly a key factor in favor of issuing the writ in a criminal case.[14] In considering issuance of the writ, the district court should have heavily weighed the potential impact of Sanchez's proffered testimony.

The writ should, therefore, have been granted unless the government has demonstrated that Sanchez's testimony, as proffered, is wholly lacking in truth, the request for the writ is frivolous or the writ was requested solely to abuse the process. In refusing to issue the writ, the district court stated that it was not convinced that the appearance of Sanchez was either relevant, probative or necessary to present Cruz–Jiminez's defense. It reasoned that Cruz–Jiminez had failed to establish clearly that Sanchez would testify to facts which would aid his defense in any way. The reasons the district court gave for its conclusion that Sanchez's testimony would not

---

**13.** For example, if granting a request for a writ will necessitate a trial continuance, we believe that a trial court may take into consideration the factors normally relevant in deciding whether to grant such a continuance, including counsel's diligence in seeking the writ. *See, e.g., United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 594, 116 L.Ed.2d 618 (1991); *United States ex rel. Searcy v. Greer*, 768 F.2d 906, 913 (7th Cir.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 363 (1985); *United States v. Sterling*, 742 F.2d 521, 527 (9th Cir.), *cert. denied,* 471

U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985). Here, however, the trial judge did not base its decision on such factors.

**14.** In the civil context, however, we did not consider the probability of success on the merits controlling. *Jerry*, 632 F.2d at 255 ("the [district] court should not base the exercise of its discretion on the probability that a prisoner will succeed on the merits of the claim …") (quoting *Ballard v. Spradley*, 557 F.2d 476, 481 (5th Cir.1977)).

be relevant or probative indicate that its real concern was that the proffer was wholly lacking in truth. Thus, the district court stated that Sanchez would not present any

evidence that would assist the defendant or be probative, because we don't believe it has been established in any way that he would be prepared to testify in the conversation between any prison personnel and the defendant in which he served as an interpreter that it was the prison officials who initiated the request to defendant to clean this area in question.

App. at 320. In reaching this conclusion, the district court may have relied on the government's differing version of what Sanchez was likely to say in denying Cruz–Jiminez's request for a writ of habeas corpus ad testificandum. In its version of what Sanchez might be expected to say, the government stated its expectation that Sanchez would not testify that he interpreted a conversation between Bebow and Cruz–Jiminez. According to the government, Sanchez would have merely testified that he interpreted a conversation between Cruz–Jiminez and a prison official whom he could not identify as Bebow. The fact that Sanchez could not identify Bebow as the official does not make Sanchez's testimony wholly irrelevant or lacking in probative value. It may lessen its value to the defense and perhaps, if this were all Sanchez was expected to say, cause us to hesitate in holding that the district court abused its discretion in denying the writ. Testimony by Sanchez, however, that he could not identify Bebow but that he remembered interpreting a conversation with some official substantially along the lines contended by Cruz–Jiminez would not be inconsistent with the government's proffer and would still be plainly material to the defense.

Because the evidence the government has thus far produced to show that Sanchez would not testify in accord with Cruz–Jiminez's proffer is not conclusive, additional proceedings are necessary to determine whether a writ of habeas corpus ad testificandum to secure Sanchez's testimony should have been granted. By showing that Sanchez's proffered testimony would have been relevant and material to his de-

fense of lack of specific intent, Cruz–Jiminez has met the threshold requirements of section 2241(c)(5) as well as Rule 17(b) and a writ of habeas corpus ad testificandum should issue unless the government can show that Cruz–Jiminez's proffer is wholly lacking in truth.

### V.

For these reasons, we hold that the district court abused its discretion when it denied Cruz–Jiminez's application for a writ of habeas corpus ad testificandum unless it appears that Sanchez will not give any material testimony or the testimony he is likely to give is wholly lacking in truth. We will, therefore, reverse and remand this case to the district court with instructions to determine what Sanchez's testimony is likely to be by holding a hearing or otherwise arranging to secure the substance of his testimony under oath. If the witness will testify substantially as set out in Cruz–Jiminez's proffer, to the effect that a prison official directed him to clean the area, the district court should vacate Cruz–Jiminez's conviction, grant him a new trial and issue the writ to compel the witness's testimony. If the witness's testimony will not be material to Cruz–Jiminez's defense, the conviction will stand. The case is remanded to the district court for further proceedings consistent with this opinion.