

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2009

# Gov VI v. David Motta

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2693

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Gov VI v. David Motta" (2009). 2009 Decisions. Paper 1110.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1110

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-2693

_____

GOVERNMENT OF THE VIRGIN ISLANDS

v.

DAVID MOTTA,
                                Appellant

_____

APPEAL FROM A JUDGMENT OF THE
DISTRICT COURT OF THE VIRGIN ISLANDS,
APPELLATE DIVISION
(D.C. Crim. No. 04-cr-00174-001)
Chief Judge: Honorable Curtis V. Gomez
District Judge: Honorable Stanley S. Brotman
Superior Court Judge: Honorable Leon A. Kendall

_____

Argued:  April 23, 2009

_____

Before: BARRY, HARDIMAN, and COWEN, <u>Circuit Judges</u>

(Opinion Filed: June 30, 2009)

_____

Eric S. Chancellor, Esq. (Argued)
2111 Company Street,
Christiansted, St. Croix
USVI, 00820-0000

<u>Counsel for Appellant</u>

Tiffany V. Robinson, Esq. (Argued)
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade, GERS Complex, 2nd Floor
Charlotte Amalie
St. Thomas, VI 00802

Counsel for Appellee

_____

OPINION

_____

BARRY, Circuit Judge

Appellant David Motta was convicted by a jury of robbery, possession of a deadly weapon during a crime of violence, and attempted rape.[1] The convictions were affirmed by a panel of the Appellate Division of the District Court of the Virgin Islands. Motta appeals to this Court, alleging error in the trial court's refusal to allow an impeachment witness to testify. We will affirm.

**Factual Background**

At approximately 10:00 a.m. on the morning of September 12, 2001, Kim Urgent was reading meters as part of her job with the Virgin Islands Water and Power Authority. After stopping to read a meter, Urgent felt a gun pressed to the back of her neck. Turning around, she saw two men, who demanded her jewelry and money. Frightened, Urgent complied. One man then searched her car, and found a cell phone. At this point, the men sexually assaulted Urgent and attempted to rape her, but the attempt was aborted because her jeans were too tight to remove, and her cell phone rang. Urgent told the men that the call was likely from her

_____

[1] Motta was sentenced to 15 years on the robbery count, five years (consecutive) on the possession of a deadly weapon count, and ten years (concurrent) on the attempted rape count. Motta's sentence is not at issue here.

boss, who, if she did not answer, would come looking for her. At this point, the men left the scene in a white car, and Urgent contacted the police.

Urgent identified Motta and his brother, Alan, as the perpetrators. She first identified them, albeit with some hesitation in light of different hairstyles, from a book of a large number of photographs maintained by the police. She also identified Motta in person, seeing him twice at a local gas station and once at a street party. Finally, Urgent made an in-court identification of Motta during trial.[2]

At trial, Motta put on an alibi defense, claiming that he was scavenging car parts from an abandoned vehicle on the other side of the island at the time of the robbery and assault. The government challenged this alibi with the testimony of Celestina Horsford, who stated that she saw Motta arrive at the abandoned vehicle shortly before 9:00 a.m., leave shortly thereafter between 9:00 a.m. and 9:30 a.m., and return around 1:30 p.m. This testimony, if believed by the jury, as clearly it was, wholly undermined Motta's alibi as it indicated that he was not where he claimed to be at the time of the crime. Horsford also testified that Motta arrived in a white car, the same color as the car Urgent testified had been driven by the men who robbed and assaulted her. On cross examination Horsford explicitly denied having told the brother's lawyer, Renee Dowling, a different timeline and that the car was blue, as Motta would later testify that it was.

To counter Horsford's testimony, Motta sought to have Dowling testify to impeach Horsford as to her "description of the vehicle [and] the individuals driving . . . ." App. at 141, but did not seek to impeach her, as he now says he did, in terms of the precise

_____

[2] For reasons undisclosed by the record, the Motta brothers were tried separately. Alan, too, was convicted, and his convictions were affirmed by the Appellate Division. *See Motta v. Gov't of V.I.*, 2004 WL 2848467 (App. Div. D. V.I. Nov. 30, 2004). It does not appear that Alan thereafter appealed his convictions to this Court.

timeline of Motta's coming and going. The District Court refused to allow Dowling to testify, and Motta claims this ruling constitutes reversible error. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## Discussion

Although it is not altogether clear, it appears that it was the government's position before the trial court and before the Appellate Division, and it appears to be the government's position before us, that because Motta had already impeached or could impeach Horsford in ways it does not identify, any further impeachment of her by what she purportedly told Dowling would have been inadmissible cumulative evidence. Enough, in other words, was enough. Indeed, the trial court excluded Dowling's testimony as cumulative although it did not use that word, did not do the requisite Fed.R.Evid. 403 balancing, and as the Appellate Division noted, "did not explain why" it was cumulative. *Id.* at 17. It appears that the trial court believed that because Motta had a transcript of Horsford's testimony at the brother's trial and her statement to the police, no more was needed, although there is no indication that the court knew how if at all Horsford could have been impeached with those materials. What *is* clear, however, is that the court was concerned that "another lawyer in preparation for trial [could] come in here to discuss what . . . discussion she may or may not have [had with] that particular witness." *Id.* at 141. Indeed, the government warned the court that it would violate the attorney client privilege for Dowling to testify about her preparation for trial and her investigation. The court responded that "we are not getting into that complicated aspect. If that's what you are going to do, she will not testify." *Id.* at 142. Defense counsel persisted: "We feel it should have been allowed as impeachment," *id.*, but the court moved on.

The Appellate Division found that because Motta had "ample opportunity to challenge Horsford's credibility," the trial court did not abuse its discretion in excluding Dowling's testimony as cumulative. *Id.* at 17. However, it similarly failed to describe in what way or even *of* what that testimony would have been

-4-

cumulative, and did not even mention time or car color.[3]

> Cumulative evidence can, of course, be inadmissible. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or *needless presentation of cumulative evidence*.

Fed. R. Evid. 403 (emphasis added). But Horsford had not yet been impeached in any material way, if at all. Moreover, her testimony in the brother's trial and her statement to the police, both of which we have reviewed, were consistent with each other and with her testimony at Motta's trial as to the essential parameters of the timeline and the color of the car. And, certainly, Dowling's testimony would have been relevant impeachment evidence given that on cross examination, Horsford denied having said what it was proffered that Dowling would testify she said as to those discrete matters. We simply cannot see how that testimony would have been cumulative of anything, and the refusal to allow Dowling to testify was error.

The error, however, was harmless, and does not require that we vacate Motta's conviction. The government presented substantial evidence of Motta's guilt and, more importantly, the excluded impeachment testimony was insignificant. Critically, any minor variation in the timeline, which is all there could have been, would not have contradicted the gravamen of Horsford's testimony – to wit, that Motta was *not* where he claimed to be at the time of the assault and robbery.[4] Moreover, as to the color of the car,

---

[3] The Appellate Division added, again without any explanation of its own and none by the trial court, that Dowling's testimony "was likely to confuse the issues." App. 18. We surely do not see that as "likely."

[4] We have assumed, for purposes of our discussion, that Motta claimed at trial that Dowling would impeach Horsford with respect to the timeline. As noted above, that he did so is anything

-5-

Horsford at all times other than when she purportedly spoke to Dowling, said the car was white – in her prior testimony in the brother's case, in her testimony in this case, and in her statement to the police.

At the end of the day, Dowling's proffered testimony is the sort of commonplace impeachment evidence found at nearly every trial. While relevant and thus admissible, this sort of impeachment evidence – which picks at minor inconsistencies found within a series of a witness's prior statements – is rarely of much import. This case is no exception: we simply cannot see how the exclusion of Dowling's very limited testimony could have affected the jury's verdict.

And even assuming, with no great confidence, that the exclusion was a violation of Motta's Sixth Amendment right to present witnesses on his behalf, and thus an error of constitutional dimension,[5] the error was harmless. In light of the "overwhelming evidence against the defendant," *Gov't of the V.I. v. Davis*, 561

---

but clear.

[5] Whether the error was of constitutional dimension, or simply a violation of the Rules of Evidence, is a question we need not decide given that the error would be harmless under either standard. *Compare Chapman v. California*, 386 U.S. 18, 24 (1967); *Davis*, 561 F.3d at 165 (requiring that constitutional errors be harmless "beyond a reasonable doubt") *with Kotteakos v. United States*, 328 U.S. 750, 776 (1946) (non-constitutional errors will only justify reversal if error had a "substantial and injurious effect" on the verdict). We note, however, that the test for whether a defendant's Sixth Amendment rights were violated by a court's decision to exclude evidence contains a materiality requirement that was surely not met here. *See, e.g.*, *Gov't of the V.I v. Mills*, 956 F.2d 443, 446 (3d Cir. 1992) (defendant must demonstrate (1) a deprivation of an opportunity to present evidence, (2) that the evidence was "material and favorable," and (3) that the deprivation was "arbitrary or disproportionate to any legitimate evidentiary or procedural purpose"); *see also United States v. Cruz-Jiminez*, 977 F.2d 95, 100 (3d Cir. 1992).

F.3d 159, 165 (3d Cir. 2009), and the minute import of the erroneously excluded evidence, we comfortably conclude that the "the guilty verdict actually rendered in *this* trial was surely unattributable to the error," *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (emphasis in original).

## Conclusion

For reasons set forth above, we will affirm the order of the Appellate Division which affirmed Motta's judgment of conviction.

*Government of the Virgin Islands v. David Motta*, No. 08-2693
COWEN, Circuit Judge, dissenting.

Because I disagree with the Court's determination that the trial court committed merely *harmless* error, I respectfully dissent.

In an effort to impeach the alibi-related testimony of Horsford, Motta unsuccessfully sought to present the testimony of his brother's lawyer, Dowling, regarding certain prior statements allegedly made to her by this witness. Horsford, who testified that Motta was in a white car and returned to the abandoned vehicle around 1:30 p.m., denied on cross-examination that she ever told Dowling either that the car was blue or that she saw Motta returning to the abandoned vehicle at an earlier time. Dowling evidently would have testified that Horsford did in fact tell her that the car itself was blue and that she witnessed Motta coming back to the derelict vehicle much earlier than 1:30 p.m. (and even earlier than the 12:30 p.m. time recorded in Horsford's police statement). The majority correctly rejects the Appellate Division's determination that it was appropriate to exclude such testimony as cumulative. Like the trial court, the Appellate Division failed to provide a real explanation for this cumulativeness finding, omitting any express reference to either the timeline or the color of the car. Contrary to the trial court's suggestions, Horsford's prior testimony in the brother's trial and her police statement did not constitute sufficient substitutes for Dowling's own proffered testimony, especially with respect to the color issue. As the majority notes (and neither the Appellate Division nor the trial

-7-

court evidently recognized), Dowling's testimony would have actually provided relevant and non-superfluous impeachment evidence given Horsford's own adamant denials on cross-examination. In the apt words of the majority, "[w]e simply cannot see how that testimony would have been cumulative of anything, and the refusal to allow Dowling to testify was error."[6]

Nevertheless, I find that this error itself was *not* harmless. Initially, the government failed to raise this harmlessness issue in its own appellate briefing, although the issue was subsequently addressed at oral argument through this Court's own questioning. See, e.g., United States v. McLaughlin, 126 F.3d 130, 135 (3d Cir. 1997) (recognizing that appellate court had discretion to consider whether constitutional error was harmless where government did not argue issue but refusing to do so because of complexity of record and lack of certainty or clarity with respect to harmlessness finding). In any case, Horsford was an important government witness, presented to rebut Motta's own defense that he could not have been one of the attackers in Estate Mary's Fancy because he was actually in Estate Campo Rico when the crimes occurred. The color of the car, in particular, appeared to constitute an important and disputed issue at trial. While the victim testified that her attackers used a *white* car, the defense claimed that Motta was driving in a *blue* car on the day in question. In the absence of the trial court's evidentiary error, Dowling would have testified that Horsford actually told her that she did in fact see a *blue* car. In turn, a jury could have reasonably relied on such impeachment testimony to call into question Horsford's sworn denial on the stand that she ever made such a statement as well as her specific claim, made at both trials and in the police statement, that she saw a *white* car. Under the circumstances, I cannot agree with the majority's characterization of Dowling's proffered non-cumulative testimony as involving merely "minor inconsistencies" and the "sort of commonplace impeachment evidence found at nearly every trial."

In the end, the majority appropriately points out that the

---

[6] The majority also properly concludes that the Appellate Division failed to provide any justification for its finding that the proffered testimony was "likely" to confuse the issues.

government presented substantial evidence of Motta's guilt in this case.  Nevertheless, an evidentiary error is harmless only if it is highly probable that the error did not contribute to the jury's judgment of conviction.  <u>United States v. Sallins</u>, 993 F.2d 344, 348 (3d Cir. 1993).  The error in precluding the defense from at least attempting to impeach an important prosecution witness on a important disputed issue fails to satisfy this rigorous standard.  I accordingly would reverse the Appellate Division's ruling affirming the conviction and remand this matter for a new trial.