OPINION
BARRY, Circuit Judge.
Appellant David Motta was convicted by a jury of robbery, possession of a deadly weapon during a crime of violence, and attempted rape.[1] The convictions were affirmed by a panel of the Appellate Division of the District Court of the Virgin Islands. Motta appeals to this Court, alleging error in the trial court’s refusal to allow an impeachment witness to testify. We will affirm.

Factual Background

At approximately 10:00 a.m. on the morning of September 12, 2001, Kim Urgent was reading meters as part of her job with the Virgin Islands Water and Power Authority. After stopping to read a meter, Urgent felt a gun pressed to the back of her neck. Turning around, she saw two men, who demanded her jewelry and money. Frightened, Urgent complied. One man then searched her car, and found a cell phone. At this point, the men sexually *186 assaulted Urgent and attempted to rape her, but the attempt was aborted because her jeans were too tight to remove, and her cell phone rang. Urgent told the men that the call was likely from her boss, who, if she did not answer, would come looking for her. At this point, the men left the scene in a white car, and Urgent contacted the police.
Urgent identified Motta and his brother, Alan, as the perpetrators. She first identified them, albeit with some hesitation in light of different hairstyles, from a book of a large number of photographs maintained by the police. She also identified Motta in person, seeing him twice at a local gas station and once at a street party. Finally, Urgent made an in-court identification of Motta during trial.[2]
At trial, Motta put on an alibi defense, claiming that he was scavenging car parts from an abandoned vehicle on the other side of the island at the time of the robbery and assault. The government challenged this alibi with the testimony of Celestina Horsford, who stated that she saw Motta arrive at the abandoned vehicle shortly before 9:00 a.m., leave shortly thereafter between 9:00 a.m. and 9:30 a.m., and return around 1:30 p.m. This testimony, if believed by the jury, as clearly it was, wholly undermined Motta’s alibi as it indicated that he was not where he claimed to be at the time of the crime. Horsford also testified that Motta arrived in a white car, the same color as the car Urgent testified had been driven by the men who robbed and assaulted her. On cross examination Horsford explicitly denied having told the brother’s lawyer, Renee Dowling, a different timeline and that the car was blue, as Motta would later testify that it was.
To counter Horsford’s testimony, Motta sought to have Dowling testify to impeach Horsford as to her “description of the vehicle [and] the individuals driving----” App. at 141, but did not seek to impeach her, as he now says he did, in terms of the precise timeline of Motta’s coming and going. The District Court refused to allow Dowling to testify, and Motta claims this ruling constitutes reversible error. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

Discussion

Although it is not altogether clear, it appears that it was the government’s position before the trial court and before the Appellate Division, and it appears to be the government’s position before us, that because Motta had already impeached or could impeach Horsford in ways it does not identify, any further impeachment of her by what she purportedly told Dowling would have been inadmissible cumulative evidence. Enough, in other words, was enough. Indeed, the trial court excluded Dowling’s testimony as cumulative although it did not use that word, did not do the requisite Fed.R.Evid. 403 balancing, and as the Appellate Division noted, “did not explain why” it was cumulative. Id. at 17. It appears that the trial court believed that because Motta had a transcript of Horsford’s testimony at the brother’s trial and her statement to the police, no more was needed, although there is no indication that the court knew how if at all Horsford could have been impeached with those materials. What is clear, however, is that the court was concerned that “another lawyer *187 in preparation for trial [could] come in here to discuss what ... discussion she may or may not have [had with] that particular witness.” Id. at 141. Indeed, the government warned the court that it would violate the attorney client privilege for Dowling to testify about her preparation for trial and her investigation. The court responded that “we are not getting into that complicated aspect. If that’s what you are going to do, she will not testify.” Id. at 142. Defense counsel persisted: “We feel it should have been allowed as impeachment,” id., but the court moved on.
The Appellate Division found that because Motta had “ample opportunity to challenge Horsford’s credibility,” the trial court did not abuse its discretion in excluding Dowling’s testimony as cumulative. Id. at 17. However, it similarly failed to describe in what way or even o/what that testimony would have been cumulative, and did not even mention time or car color.[3]
Cumulative evidence can, of course, be inadmissible. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
Fed.R.Evid. 403 (emphasis added). But Horsford had not yet been impeached in any material way, if at all. Moreover, her testimony in the brother’s trial and her statement to the police, both of which we have reviewed, were consistent with each other and with her testimony at Motta’s trial as to the essential parameters of the timeline and the color of the car. And, certainly, Dowling’s testimony would have been relevant impeachment evidence given that on cross examination, Horsford denied having said what it was proffered that Dowling would testify she said as to those discrete matters. We simply cannot see how that testimony would have been cumulative of anything, and the refusal to allow Dowling to testify was error.
The error, however, was harmless, and does not require that we vacate Mot-ta’s conviction. The government presented substantial evidence of Motta’s guilt and, more importantly, the excluded impeachment testimony was insignificant. Critically, any minor variation in the time-line, which is all there could have been, would not have contradicted the gravamen of Horsford’s testimony — to wit, that Mot-ta was not where he claimed to be at the time of the assault and robbery.[4] Moreover, as to the color of the car, Horsford at all times other than when she purportedly spoke to Dowling, said the car was white— in her prior testimony in the brother’s case, in her testimony in this case, and in her statement to the police.
At the end of the day, Dowling’s proffered testimony is the sort of commonplace impeachment evidence found at nearly every trial. While relevant and thus admissible, this sort of impeachment evidence— which picks at minor inconsistencies found within a series of a witness’s prior statements — is rarely of much import. This case is no exception: we simply cannot see how the exclusion of Dowling’s very limited testimony could have affected the jury’s verdict.
*188 And even assuming, with no great confidence, that the exclusion was a violation of Motta’s Sixth Amendment right to present witnesses on his behalf, and thus an error of constitutional dimension,[5] the error was harmless. In light of the “overwhelming evidence against the defendant,” Gov’t of the V.I. v. Davis, 561 F.3d 159, 165 (3d Cir.2009), and the minute import of the erroneously excluded evidence, we comfortably conclude that the “the guilty verdict actually rendered in this trial was surely unattributable to the error,” Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (emphasis in original).

Conclusion

For reasons set forth above, we will affirm the order of the Appellate Division which affirmed Motta’s judgment of conviction.

. Motta was sentenced to 15 years on the robbery count, five years (consecutive) on the possession of a deadly weapon count, and ten years (concurrent) on the attempted rape count. Motta's sentence is not at issue here.

. For reasons undisclosed by the record, the Motta brodiers were tried separately. Alan, too, was convicted, and his convictions were affirmed by the Appellate Division. See Motta v. Gov't of V.I., 2004 WL 2848467 (App.Div. D.V.I. Nov. 30, 2004). It does not appear that Alan thereafter appealed his convictions to this Court.

. The Appellate Division added, again without any explanation of its own and none by the trial court, that Dowling’s testimony “was likely to confuse the issues.” App. 18. We surely do not see that as "likely.”

. We have assumed, for purposes of our discussion, that Motta claimed at trial that Dowl-ing would impeach Horsford with respect to the timeline. As noted above, that he did so is anything but clear.

. Whether the error was of constitutional dimension, or simply a violation of the Rules of Evidence, is a question we need not decide given that the error would be harmless under either standard. Compare Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Davis, 561 F.3d at 165 (requiring that constitutional errors be harmless "beyond a reasonable doubt") with Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (non-constitutional errors will only justify reversal if error had a "substantial and injurious effect” on the verdict). We note, however, that the test for whether a defendant's Sixth Amendment rights were violated by a court's decision to exclude evidence contains a materiality requirement that was surely not met here. See, e.g., Gov't of the V.I v. Mills, 956 F.2d 443, 446 (3d Cir.1992) (defendant must demonstrate (1) a deprivation of an opportunity to present evidence, (2) that the evidence was "material and favorable,” and (3) that the deprivation was "arbitrary or disproportionate to any legitimate evidentiary or procedural purpose”); see also United States v. Cruz-Jiminez, 977 F.2d 95, 100 (3d Cir.1992).